*299 OPINION OF THE COURT
Smith, J.
The primary issue before this Court is whether parties should be precluded from relitigating the validity of fee arrangements determined to be illegal in an earlier action, when they were in privity with the person against whom the issue was decided. We conclude that collateral estoppel bars relitigation.
Plaintiffs, Frederick F. Buechel, an orthopedic doctor and Michael J. Pappas, a mechanical engineer, are the inventors of a prosthetic shoulder device called the floating center prosthetic joint. They retained the firm of Bain, Gilfillan & Rhodes, P. C. “to undertake the preparation and prosecution of a patent application covering the invention on a contingency basis.” The fee agreement, executed on November 12, 1974, provided that the law firm would receive a one-third interest in monies, profits or income resulting from the invention.
In July 1975, the parties formalized their relationship and incorporated Biomedical Engineering Corporation (BEC) in New Jersey. The attorneys’ interests in the corporation mirrored their fee agreement. Plaintiffs each held one third of the shares of the corporation, with the remaining one-third interest divided equally among Bain, Gilfillan and Rhodes. Plaintiffs, who had continued to collaborate on development of prosthetic devices, assigned to BEC their interests in the floating center prosthetic joint and any future prosthetic devices invented by them. Significantly, Rhodes failed to advise plaintiffs of the potential for conflicts of interest that could result from converting the one-third interest in a single invention into a one-third equity interest in a corporation that would exploit all future inventions. A dispute subsequently arose among the attorneys, resulting in Rhodes’ departure from the firm in December 1981. Defendants Bain and Gilfillan, however, continued to render legal services to plaintiffs on BEC matters.
In 1983, for tax purposes, BEC was dissolved, and its assets were transferred to a newly formed entity, the Biomedical Engineering Trust (Trust I), also with plaintiffs as trustees. *300 Again, the trust agreement continued the parties’ prior arrangement. The three attorneys, as shareholders of the dissolved corporation, received equivalent equity interests in the trust. In 1984, a second trust, the Biomedical Engineering Trust II (Trust II) was created, again with plaintiffs as trustees, and it held the marketing rights to a self-centering hip device. While neither Bain nor Gilfillan held an interest in Trust II, their former partner, Rhodes, provided patent protection services to the entity.
In 1987, after a dispute arose over trust distributions, Rhodes commenced an action against plaintiffs as trustees to recover monies that the trustees allegedly improperly paid themselves. In response to plaintiffs’ motion to dismiss for failure to join all the trustees, Rhodes amended his complaint, adding defendants Bain and Gilfillan in their capacity as trust beneficiaries. In 1991, four years after Rhodes commenced the action, plaintiffs asserted counterclaims against Rhodes for breach of fiduciary duty and malpractice, alleging among other things that “the [algreements were unfair” and that Rhodes “while acting as their attorney, induced [plaintiffs] to enter into the unfair [algreements by taking unfair advantage of his fiduciary capacity and superior knowledge * * * by deceiving [plaintiffs] as to the value of his and/or the [l]aw [flirm’s [s]ervices and by failing to disclose * * * the value of the approximate one-third interest relinquished by [the inventors].” Plaintiffs additionally asserted malpractice on the part of Rhodes in that he represented that he and his law firm were qualified, competent and experienced in patent and business affairs, which representations were false. Plaintiffs did not, at that time, name defendants as adverse parties. In a later letter sent to defendants, Rhodes’ attorney made clear that if the counterclaims were established, recovery for the counterclaims “[would] be subject to contribution by [defendants,] [Rhodes’] former partners.”
Recognizing their unity with Rhodes in regard to the validity of the challenged fee arrangement, on March 12, 1992, Bain wrote plaintiffs that he was unclear as to how the counterclaims could be narrowly construed solely against Rhodes. Bain wrote that he and Gilfillan were “concerned that the counterclaims could be interpreted broadly to assert overreaching either by the law firms in which Rhodes, Gilfillan and I were involved or, at the least by Rhodes as a partner or agent of those law firms, thereby potentially extending the consequences of the alleged wrongdoing by Rhodes to Gilfillan and myself.”
*301 On January 5, 1995, after a number of disputes, Gilfillan wrote plaintiffs:
“[W]ith the trial date apparently becoming imminent, you have placed John [Bain] and I [sic] in a position where we have to deal with the question of whether or not we must become active in the Rhodes’ litigation to protect our rights, vis-á-vis the position of the Trustees regarding legal fees. I would certainly not like to have to do that. However, I will not waive any rights. We are gravely concerned that if we do not raise the issue in this litigation or otherwise provide for preservation rights, we will be estopped in the future from challenging the Trustees on this highly improper conduct. Needless to say, we cannot let this happen.”
On January 10, 1995, plaintiffs fired Bain and Gilfillan and moved to amend their counterclaims in the Rhodes action to assert specific claims against them. Defendants opposed the motion. Supreme Court denied plaintiffs’ motion because they failed to offer an acceptable excuse for the delay.
Plaintiffs then commenced the present action against defendants Bain and Gilfillan, alleging breach of fiduciary and ethical obligations and legal malpractice. Plaintiffs sought the termination of trust payments to defendants and the turnover of trust files. At defendants’ request, Supreme Court stayed the action pending resolution of the Rhodes action. In support of their request for a stay, defendants submitted an affidavit to the court arguing:
“Because of the similarity of the underlying facts and transactions in both the Rhodes action and this one, proceeding with this action at this time would be duplicative and a waste of judicial resources. Indeed, a decision in the Rhodes case may estop or bar certain claims in this action.”
In 1998, following a bench trial, Supreme Court determined in the Rhodes action that the fee arrangement between plaintiffs and their original counsel, the firm of Bain, Gilfillan & Rhodes, was invalid. The court found that, from the outset of the attorney-client relationship, there had not been full disclosure regarding the possibility of the firm’s conflict of interest. The court further found that pláintiffs were never advised to seek independent counsel before entering into a busi *302 ness relationship with their attorneys, and that Rhodes had “exploited his clients through affirmatively pursuing a business relationship with them absent full disclosure.” The court noted that Rhodes’ extensive ethical violations constituted serious breaches of his fiduciary obligation “not [to] take advantage of his superior knowledge and position,” and that he failed to inform his clients that he could be discharged as their attorney at any time. Consequently, Supreme Court held that the fee agreement, from which Rhodes derived his interest in the trusts, was unethical and unenforceable, and in its decision the court ordered that “the trust agreements are rescinded.”
The Appellate Division affirmed, concluding “neither the initial arrangement nor its subsequent incarnations were entered into upon adequate disclosure * * * of other possible fee arrangements and potential conflicts of interest, or with the aid of independent counsel * * *. Rescission of the parties’ arrangements ab initio, with payment to plaintiff in quantum meruit for his services, is an equitable result * * *” (258 AD2d 274 [1999] [citations omitted]). This Court declined to hear the appeal (93 NY2d 806 [1999]).
By order dated February 5, 1998, Supreme Court lifted the stay in the present suit, and on March 23, 1998, defendants Bain and Gilfillan answered the complaint and asserted counterclaims, seeking their reinstatement as beneficiaries of the trust. Defendants alleged that plaintiffs “repudiated their agreements with Bain and Gilfillan and now contend that all such agreements are void ab initio.” Both parties moved for summary judgment. Supreme Court granted plaintiffs’ motion for partial summary judgment, rescinding and terminating defendants’ equity interests in Trust I and ruled the fee agreements between plaintiffs and defendants unenforceable, ab initio, “because they were entered into in violation of the ethical duties owed to plaintiffs.” The court directed defendants to return to plaintiffs all monies distributed less reasonable attorneys’ fees.
The court explained that the issue of rescission was thoroughly litigated in the Rhodes action, and that defendants had elected to elude every opportunity to participate actively. Supreme Court determined that defendants were in privity with Rhodes, that they “actually did cooperate somewhat in [his] trial preparation,” and that on “this score absolutely no adverse relationship existed between them.” Finally, the defendants had not shown that their failure to more fully participate in the Rhodes action prejudiced them or affected its *303 outcome. The court stated, “judging by the context of defendants’ affidavits in the present action, their testimony in the Rhodes action, even assuming its veracity, would not have met the standard of professional conduct applied in the prior case, having failed to allege, inter alia, that plaintiffs were informed their attorneys could be replaced without penalty.”
The Appellate Division unanimously affirmed. The Court rejected the contention that “Bain and Gilfillan were merely nominal parties to the Rhodes matter,” explaining that:
“The issue presented for decision in Rhodes was whether or not Buechel and Pappas, as trustees, were required to make payments to an attorney whose rights as a trust beneficiary derived from the fee agreement between Buechel and Pappas, individually, and the law firm of Bain, Gilfillan & Rhodes. This action similarly addresses the status of attorney-beneficiaries whose rights to receive proceeds from the trust are predicated on the identical fee agreement” (275 AD2d 65, 72 [emphasis in original]).
On motion for reargument, defendants contended that the claims against them for nullification of the fee agreement were not precluded. They also argued, for the first time, that plaintiffs were barred from bringing suit against them under the doctrine against claim splitting. The Appellate Division denied the reargument motion and certified the following question to this Court: “Were the orders of the Supreme Court, as affirmed by this Court, properly made?” We conclude that they were.
Analysis
The equitable doctrine of collateral estoppel is grounded in the facts and realities of a particular litigation, rather than rigid rules. Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity (Ryan v New York Tel. Co., 62 NY2d 494, 500 [1984]). The policies underlying its application are avoiding re-litigation of a decided issue and the possibility of an inconsistent result (D’Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, 664 [1990]).
Two requirements must be met before collateral estoppel can be invoked. There must be an identity of issue which has nec *304 essarily been decided in the prior action and is decisive of the present action, and there must have been a full and fair opportunity to contest the decision now said to be controlling (see, Gilberg v Barbieri, 53 NY2d 285, 291 [1981]). The litigant seeking the benefit of collateral estoppel must demonstrate that the decisive issue was necessarily decided in the prior action against a party, or one in privity with a party (see, id.). The party to be precluded from relitigating the issue bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination.
The doctrine, however, is a flexible one, and the enumeration of these elements is intended merely as a framework, not a substitute, for case-by-case analysis of the facts and realities. “In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of * * * fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings * * *” (see, Staatsburg Water Co. v Staatsburg Fire Dist., 72 NY2d 147, 153 [1988] [citations omitted]).
Applying these principles, we conclude that defendants are barred from now once again litigating the validity of a trust agreement that was — after extensive pretrial and trial proceedings involving them — found to be invalid.
In determining whether collateral estoppel applies here, the initial question is whether defendants — parties in the Rhodes action who were not named in the plaintiffs’ counterclaim— should, nevertheless, be bound by the determination rescinding the trust. Because for purposes of collateral estoppel, defendants were in privity with their former law partner Rhodes as to the validity of the fee arrangements, we conclude they should be bound.
In the context of collateral estoppel, privity does not have a single well-defined meaning (Matter of Juan C. v Cortines, 89 NY2d 659, 667 [1997]). Rather, privity is “‘an amorphous concept not easy of application’ * * * and ‘includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and [those who are] coparties to a prior action’ ” (id., at 667-668 [citations omitted]). In addressing privity, courts must carefully analyze whether *305 the party sought to be bound and the party against whom the litigated issue was decided have a relationship that would justify preclusion, and whether preclusion, with its severe consequences, would be fair under the particular circumstances. Doubts should be resolved against imposing preclusion to ensure that the party to be bound can be considered to have had a full and fair opportunity to litigate.
For present purposes, Bain and Gilfillan were in privity with their former law partner, Rhodes, as he was a co-signatory to the fee agreement and co-beneficiary to the trust proceeds arising from the fee agreement. Considering the facts and realities of the matters before us, we agree with the Appellate Division that defendants should be deemed to be in privity with Rhodes for purposes of litigating the validity of their fee arrangements as embodied in the trust. Defendants’ rights to receive payments were coextensive with Rhodes’ and derived from the identical arrangement entered into when the three were law partners. As the Appellate Division concluded, “[a]s partners in the law firm that entered into the fee agreement with plaintiffs, [Bain and Gilfillan’s] right to receive trust income stands or falls with the contract.” (Supra, 275 AD2d, at 74.) Indeed, defendants themselves recognized that adjudication of Rhodes’ conduct as a partner or agent of the law firm would have consequences for them. Defendants’ interests were aligned with Rhodes’ with respect to the lawfulness of the fee arrangements where millions of dollars were at issue. Thus, it is appropriate to bind them by the judgment in Rhodes under the doctrine of collateral estoppel.
Defendant trustees — parties to the Rhodes action with notice of the issues to be decided in that case — acknowledged that they were themselves “unclear as to how the wording of portions of the counterclaim [could] be so narrowly construed” to exclude them. Given these facts, as a policy matter we agree with the Appellate Division that a “party to a lawsuit cannot sit by idly while a contract, to which he is also a party, is judicially construed without being precluded by the result” (id.).
Knowing that the validity of the trust was being vigorously contested in Rhodes, and knowing the potential serious adverse consequences of the litigation, in this particular case it is appropriate to deem defendants’ interests represented by Rhodes. Defendants cannot be rewarded for their conscious, tactical decision not to take a more active role in that litigation by now allowing the very same issues and facts to be relitigated. A *306 contrary determination would undermine a policy interest that is at the heart of collateral estoppel — discouraging relitigation of issues and the potential for inconsistent outcomes.
We turn next to whether the two basic requirements for collateral estoppel have been met.
A comparison of the issue raised in the present action with the issue raised in the Rhodes action reveals that the identical issue was already litigated and decided. In the Rhodes action, Supreme Court determined, after extensive pretrial and trial proceedings, that the original fee agreement was unlawful as it was procured in violation of the canons of ethics. Supreme Court further concluded “that with regard to fees, the Trust Agreement merely recodified the prior fee arrangements entered into” and that because “[plaintiffs] did not have the benefit of truly independent counsel and were never instructed to seek [independent legal] advice * * * the trust agreements are rescinded.” This is the very issue that defendants seek to relitigate in the present action hoping that the second time around a court will reach a contrary determination.
Defendants, moreover, have failed to establish the lack of a full and fair opportunity to litigate the validity of the fee agreement in the Rhodes action. Because defendants were in privity with Rhodes, the critical question is whether Rhodes had a full and fair opportunity to litigate the issue (see, D’Arata v New York Cent. Mut. Fire Ins. Co., supra, 76 NY2d, at 666). We conclude that he did. In extensive proceedings, Rhodes vigorously defended the validity of the trust. Moreover, as noted by the Appellate Division, defendants were not just nominal parties but, as trust beneficiaries, were essential parties whose rights were affected by the outcome of the Rhodes action. The record reflects that defendants produced documents for the litigation, received copies of select documents used in the trial (including deposition transcripts), and agreed to testify as witnesses on behalf of Rhodes before changing their minds at the last minute.
Defendants make much of the fact that Supreme Court denied plaintiffs’ motion to amend their counterclaims to assert claims against defendants. While true, this fact does not undermine the holding of Rhodes which disposed of the essential claim in the instant action in holding the fee agreement was unenforceable. All that denial of the motion to amend guaranteed was that defendants would not be subject to a monetary judgment in the Rhodes action. Additionally, it was *307 defendants who beseeched the trial court to stay this action pending a determination in Rhodes, fully intending to invoke the benefits of the judgment if the outcome was favorable to them. Although, as the dissenting opinion points out, abolition of the mutuality of estoppel doctrine authorizes such use of issue preclusion, nothing in our case law correspondingly prohibits taking this fact into account in analyzing whether defendants — parties in the Rhodes action who had notice of all the proceedings — should be bound by a determination against one with whom they are united in interest as to the particular issue.* Moreover, it was defendants who vigorously opposed the expansion of the Rhodes case to include specific claims by Buechel and Pappas against Bain and Gilfillan. Defendants based their opposition on the prospect of additional delay in the Rhodes litigation.
Finally, defendants’ claim that the present matter is subject to exclusive Federal jurisdiction is without merit. This case is not preempted by patent law because plaintiffs, the inventors, did not plead any substantive questions of patent law as an element of the claims asserted against defendants. A case arises under patent law “when ‘a well-pleaded complaint establishes either that federal patent law creates the cause of action or that plaintiff’s right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims’ ” (Kroll v Finnerty, 242 F3d 1359, 1363 [Fed Cir 2001]). Here, we agree with the determination of Supreme Court that this case does not sound in patent law because the “interpretation of the patent law on issues of patent priority and infringement [is] hardly at issue.” Further, Federal patent statutes do not preempt State law in this case (see, 37 CFR 10.1 [stating that nothing in the code “shall be construed to preempt the authority of each State to regulate the practice of law, except to the extent necessary for the Patent and Trademark Office to accomplish its Federal objectives”]). Nor do lower court decisions invalidate a patent attorney’s right to *308 receive an interest in a client’s patent as full or partial payment (see, 37 CFR 10.64 [a] [3]).
Rather, this case addresses the necessary disclosures attorneys must make and the ethical obligations they must maintain in the course of their interaction with clients. Although Federal patent law recognizes that attorneys may receive an interest in patents in lieu of traditional fee arrangements, the need for disclosure mandated by the Code of Professional Responsibility governing the practice of law in this State is not obviated (see, 37 CFR 10.1; see also, Kroll v Finnerty, supra, 242 F3d, at 1364-1365).
The basic problem with the dissent is that it does not acknowledge that the Rhodes judgment rescinded Rhodes’ interest in the trusts because it found that the agreements from which the interest arose were invalid. Supreme Court stated: “[It is] ORDERED, ADJUDGED AND DECREED that since all of the agreements which purport to provide for compensation for legal services, by the payment of money or by providing an interest in any trust * * * were entered into in violation of the ethical duties owed by attorneys to their clients, the relief sought in the Third Counterclaim in the Verified Amended Answer to Third Amended Complaint * * * is granted, thereby terminating and rescinding, [ah] initio, any interests Rhodes holds, or may have held, in Trusts I and II.” Plaintiffs here raise a question that has already been adjudicated, specifically, whether the fee agreement is invalid as resulting from a breach of duty by attorneys to their clients.
The dissent also misconstrues the test for privity that the Court employs. We do not adopt the so called ‘Virtual Representation Doctrine.” That doctrine states that a nonparty may be bound by the results of a trial where the nonparty has sufficient ties to a litigant.
“Virtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues. In reviewing cases decided under the doctrine, we have described the types of relationships contemplated: ‘estate beneficiaries bound by administrators, presidents and sole stockholders by their companies, parent corporations by their subsidiaries, and a trust beneficiary by the trustee’. Southwest Airlines Co. v. Texas Intern. Airlines, 546 F.2d *309 84, 97 (5th Cir. 1977)” (Pollard v Cockrell, 578 F2d 1002, 1008-1009 [1978]).
Moreover, Green v Santa Fe Indus. (70 NY2d 244 [1987]) is clearly distinguishable. There this Court held that an action by former minority stockholders against several corporations for breach of fiduciary duty was not barred by collateral estoppel. In Green, the only relationship between the party to be bound, and against whom the issue was decided, “was that they owned separate blocks of stock in the same company.” (Id., at 254.) Plaintiffs were not litigants in the prior Federal action and were determined by this Court not to be in privity with plaintiffs in that action. Here, by contrast, the relationship between defendants and Rhodes — former partners and co-trustees entitled to trust funds based on the identical fee agreement — coupled with defendants’ litigation posture, compel a different result.
In the end, we cannot agree with our dissenting colleague that defendants’ strategy was “understandable and legitimate” (dissenting opn, at 316). Rather, we agree with the trial court and the unanimous Appellate Division that defendants, as parties to the action, were well aware that their own fee agreements were being challenged and construed, and they had an obligation to take an active role in that litigation — which went on for nearly a decade — or accept the consequences. Indeed, the record shows that defendants themselves knew of the potential costs of their gamble. Our holding makes plain that the law will not sanction such tactical maneuvering at the price of efficiency and consistent judgments where parties have not shown that they lacked a full and fair opportunity to be heard.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

 Further addressing the dissent, no one factor is determinative in our conclusion that defendants here were in privity with Rhodes. It is, rather, a confluence of factors that persuades us to affirm, including defendants’ relationship with Rhodes vis-a-vis the fee arrangements, their involvement in the action, their awareness of issues that would be decided, and their, acknowledged tactical decisions regarding the Rhodes litigation. Additionally, because we hold that collateral estoppel bars relitigation of the validity of the trust, defendants’ conclusory affidavits (dissenting opn, at 312-313) are irrelevant in this action.