Altegra Credit Co. v Tin Chu (2004 NY Slip Op 50241(U))

[*1]

 Altegra Credit Co. v Tin Chu

2004 NY Slip Op 50241(U)

Decided on March 25, 2004

Supreme Court, Kings County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 25, 2004

Supreme Court, Kings County,
 ALTEGRA CREDIT COMPANY, Plaintiff, - -
against TIN CHU et.al., Defendants.
Index No. 25816/02

For Plaintiff: Lee S. Wiederkeher, Esq., Delbello Donnellan Weingarten Tartaglia Wise & Wiederkeher, 1 North Lexington Avenue, White Plains, N.Y. 10601
 For Intervenor: Robert J. Smith, Esq., 420 Lexington Avenue, Suite 2300, New York, New York 10170

CAROLYN E. DEMAREST, J.
Intervenor Wing Kwan Lee Gee (aka "Chu") moves pursuant to CPLR § 3212 for summary judgment dismissing Plaintiff's complaint seeking foreclosure of a mortgage against her home which was fraudulently given by movant's son, Defendant Tin Chu, and declaring that such fraudulently obtained mortgage and the fraudulent deed upon which it was based are null and void and that the prior deed of Intervenor is valid and in full force and effect together with all real property tax exemptions appurtenant thereto.
The property at issue was purchased on February 5, 1975 by Intervenor Wing Kwan Lee Gee and her husband, Hun Goon Gee, who took title as tenants by the entirety. On February 23, 1994, Mr. Gee died, leaving Intervenor as the sole owner.
Plaintiff Altegra Credit Company ("Altegra") obtained the rights to a mortgage upon Intervenor's premises at 2246 East 12th Street, Brooklyn, New York, executed by defendant Tin Chu on November 22, 1999, to WMC Mortgage Corp. of Woodland Hills, California, by assignment to Plaintiff on November 29, 1999. The deed upon which Tin Chu premised his mortgage was also executed on November 22, 1999, purportedly by his mother, Wing Kwan Lee Gee, conveying title to said premises to her son. Intervenor first became aware of the fraudulent mortgage sometime in 2000 when mail from Plaintiff to her son Tin Chu began accumulating at her home unopened by Tin Chu. Upon further investigation, Intervenor learned that title to her home had been transferred to her eldest son, Tin Chu, without her knowledge or consent, whereupon she took her complaint to the Kings County District Attorney. The instant mortgage foreclosure action was commenced by complaint dated June 24, 2002.
Defendant Tin Chu was indicted on July 30, 2002 on charges of Grand Larceny in the Second Degree, Forgery in the Second Degree and Offering a False Instrument for Filing in the First Degree, all related to Defendant's forging of a false deed and mortgage upon his mother's [*2]home and the resultant theft of that home and the mortgage proceeds. Complainants named in the indictment were Intervenor Wing Kwan Lee Chu and WMC Mortgage Corp. ("WMC"), Plaintiff's predecessor in interest. Prior to indictment, by letter dated July 12, 2002, Assistant District Attorney Richard K. Farrell wrote to Joseph F. Abt, Esq. of Certilman Balin Adler & Hyman, Counsel to Plaintiff herein, advising of the "ongoing criminal action affecting [Tin Chu] and the [subject] real property" and relating the entire substance of Mr. Chu's confession to the crime, including that someone posing as Intervenor had actually appeared at the closing on the mortgage to WMC. Mr. Farrell enclosed a copy of the criminal complaint dated May 13, 2002, and closed by soliciting Altegra's cooperation in "a resolution of the entire situation." In addition to the District Attorney's efforts to engage Plaintiff, and even prior to his letter, Intervenor's counsel asserts that he left a telephone message for Plaintiff's counsel alerting him to Defendant's arrest.
The criminal prosecution first came before this Court on August 21, 2002. Prior to trial, at my direction, my Law Clerk communicated with Plaintiff's counsel and directed them to appear before the Court on the criminal prosecution, since Plaintiff, as successor in interest to WMC, was effectively the actual complainant or victim of the crime. Plaintiff failed to appear or ever communicate with the Court, despite the direct order of the Court to appear, until May 21, 2003.
The trial commenced on October 22, 2002, with the testimony of Intervenor Wing Kwan Lee Chu who testified that she had never transferred title to her home despite Defendant's repeated requests that she do so so that he might complete a business transaction with a woman named Mona Leung, also known to Interevenor, who had made a similar request. She swore that the signatures that appear on the deed and mortgage documents were not hers. Nancy Chan, the settlement agent for WMC from the title company, testified that Defendant told her at the closing that the woman with him was his mother, but during trial Ms. Chan was unable to recognize Intervenor who was sitting in the courtroom. Gary Bryant, a self-employed title closer who prepared the deed and notarized the signature of the grantor, did not identify Intervenor at trial.
On October 25, 2002, the jury returned a verdict of guilty of Grand Larceny in the Second Degree and Forgery in the Second Degree and the case was adjourned for sentence. After many adjournments of the sentence, finally, upon service of the Intervenor's application to intervene in the pending foreclosure matter which had also been referred to me, Lee Wiederkehr, Esq. appeared on May 21, 2003 on behalf of Washington Title for Altegra. There has never been a courtroom appearance in either case by the firm of Certilman Balin Adler & Hyman, LLP which originally commenced this action on behalf of Plaintiff. It appears that Mr. Wiederkehr, who is a member of Delbello Donnellan Weingarten Tartaglia Wise & Wiederkehr, LLP, is appearing pursuant to a title insurance policy in Plaintiff's favor.
Intervenor's motion is premised on the adjudication before this Court at Criminal Term that Defendant Tin Chu, who has not appeared in the foreclosure action, forged the documents that are the basis of Plaintiff's rights to bring this action and that title to the property was therefore never transferred from Intervenor and the mortgage is void ab initio. Intervenor argues that the doctrine of collateral estoppel precludes relitigation of the validity of the mortgage and that dismissal of the instant action is, therefore, warranted.
Plaintiff opposes the motion for summary judgment arguing that Intervenor's motion is [*3]premature in that her answer interposes a counterclaim to which, at the time the motion was made, no reply had been made. Plaintiff has since interposed its reply on June 17, 2003, long before this Court heard the argument on the merits on January 7, 2004. Such reply is contained in Plaintiff's opposition papers served July 9, 2003. The minimal procedural irregularity of which Plaintiff complains is not sufficient to defeat Intervenor's motion.
Plaintiff further opposes Intervenor's motion arguing that the doctrine of collateral estoppel is inapplicable because Plaintiff is not in privity with the parties to the criminal prosecution, it did not have a fair and full opportunity to contest the controlling decision and the issue at Criminal Term was not identical to the issue herein. Finally, Plaintiff insists that issues of fact remain regarding the validity of the mortgage that require further discovery. Plaintiff argues that the presumption contained in CPLR § 4538, that the certification of the acknowledgment of a writing is prima facie evidence that the document was executed by the person who purported to do so, has not been overcome by sufficient evidence.
Legal Analysis
"Collateral estoppel, together with its related principles, merger and bar, is but a component of the broader doctrine of res judicata which holds that, as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action." Gramatan Home Investors Corp.v. Lopez, 46 NY2d 481 (1979). It is in the interest of conserving judicial resources, as well as avoiding inconsistent results that may have the effect of undermining a prior adjudication, that collateral estoppel should be applied where the legal elements of the doctrine have been established.
Initially, it is the burden of the proponent of collateral estoppel to demonstrate the identity and decisiveness of the issue. Ryan v. New York Telephone Co., 62 NY2d 494, 501 (1984). Such identity of issue and the materiality of such issue to the pending litigation is controlling. Id. at 500. Here, the issue necessarily decided in the criminal prosecution was that Defendant Tin Chu had stolen the subject real property from Intervenor. The jury was specifically instructed that in order to find Defendant guilty of Grand Larceny in the Second Degree, as charged in Indictment No. 2350/02, it was required to find ,beyond reasonable doubt, that Defendant Tin Chu "wrongfully took title to 2246 East 12th Street, Brooklyn from its owner, Wing Kwan Lee Chu". In rendering a verdict of guilty on this charge, the jury necessarily and conclusively did so find. In the instant mortgage foreclosure, it is Plaintiff's burden to establish that the mortgage sought to be foreclosed is based upon lawful title in the Defendant mortagagor. Clearly, there is an identity of material issue between the instant action and the prior criminal adjudication.
Moreover, in finding Defendant Tin Chu guilty of Forgery in the Second Degree, the jury necessarily found that the People had proved, beyond a reasonable doubt, as an element of that offense, that Defendant, with intent to defraud, deceive or injure "falsely made, completed or altered a written instrument which was, or purported to be, or which was calculated to become, or to represent if completed, a deed." Again the identity of issue and its materiality to the instant foreclosure action is clear. It has unequivocally been determined by a court of competent jurisdiction, beyond a reasonable doubt, that the deed and mortgage based thereon, upon which Plaintiff's action relies, were forged. In such circumstances, the mortgage to Plaintiff was [*4]ineffective to convey an interest in the subject property and the instant foreclosure action must be dismissed. See Northgate Electric Profit Sharing Plan v. Hayes, 210 AD2d 384 (2d Dep't, 1994), lv. den., 87 NY2d 811 (1996); see also, V.R.W., Inc. v. Klein, 68 NY2d 560 (1986).
Plaintiff's reliance on the presumption of legitimacy from a certificate of acknowledgment of a deed pursuant to CPLR §4538 is to no avail since a finding of illegitimacy beyond a reasonable doubt is more than sufficient to meet the burden to rebut such presumption by clear and convincing evidence to a moral certainty as required by law. Republic Pension Services, Inc.v. Cononico, 278 AD2d 470 (2d Dep't, 2000), cited by Plaintiff, wherein an indictment which failed to result in conviction had erroneously been accepted as proof of forgery, is not to the contrary. Other authorities cited by Plaintiff, Shinn v. Exim Capital Corporation, 272 AD2d 315 (2d Dep't, 2000); Matter of Caputo, 266 AD2d 538 (2d Dep't, 1999); Albin v. First Nationwide Network Mortgage Co., 248 AD2d 417 (2d Dep't, 1998); Royal Inn, Ltd. v. M.A.F. Realty Corp., 105 AD2d 835 (2d Dep't, 1984); and Lum v. Antonelli, 102 AD2d 258 (2d Dep't. ,1984), similarly do not support Plaintiff's position since in none of those cases had there been a finding by a jury that the evidence was sufficient beyond a reasonable doubt.
Plaintiff relies upon the affidavit of Gary Bryant, an "independent real estate title closer" who, as previously noted, testified at the criminal trial and did not identify Intervenor as the person who, on November 22, 1999 in his presence executed the deed and mortgage prepared by him. In his affidavit sworn May 13, 2003, annexed to Plaintiff's Opposition to the Motion for Summary Judgment, Mr. Bryant states, it "was necessary to prepare and obtain a deed transferring title to the premises intended to be mortgaged." Mr. Bryant states that in accepting the signature of the woman at the closing, he relied upon two forms of identification from the person representing herself to be Wing Kwan Lee Chu a/k/a Gee: a social security card with her signature but no photograph and "an original United States of America passport in her name" bearing a photograph. Based upon his observation of the woman at the closing, who apparently spoke only Chinese, and his comparison of her with the passport photo during the approximately one hour that the closing took, Mr. Bryant believed the woman to be Wing Kwan Lee Chu, the mother of Tin Chu, and notarized the deed of conveyance.
During the pendency of this motion, and in furtherance of discovery, both Gary Bryant and Nancy Chan, a paralegal who represented the law firm of Liu & Choy, counsel for WMC at the closing of November 22, 1999, and who actually "cut" the checks on the mortgage for $325,000, had the opportunity to observe Intervenor at her attorney's office on September 3, 2003. In her affidavit, Ms. Chan indicated that she had not sat near the person represented to be Wing Kwan Lee Chu at the closing and was unable to recognize Intervenor as the person who appeared at the closing. Mr. Bryant, however, "unequivocally" stated in his affidavit of September 9, 2003, that the woman present on September 3, 2003 in the office of Counsel Robert Smith was the same woman in attendance at the closing on November 22, 1999 who executed the deed of conveyance notarized by himself. In light of this conflict, in conjunction with the oral argument of the instant motion, which was adjourned several times so as to secure the apparently reluctant appearance of Mr. Bryant [FN1], a hearing was afforded to Plaintiff at which Mr. Bryant [*5]testified.
On January 7, 2004, contrary to his representations by affidavit, Mr. Bryant testified that among the documents he had reviewed at the closing as proof of the identity of Wing Kwan Lee Chu was a photocopy of her passport. When confronted with his prior representations that he had examined an original passport, Mr. Bryant stated that he recalled that he did not see an original passport. Mr. Bryant further acknowledged that prior to viewing Intervenor on September 3, 2003, he may have been shown the photocopy of the passport photograph by Mr. Wiederkehr and was able to recognize Intervenor therefrom. He testified that Ms. Gee "resembled" the woman he saw on November 22, 1999. Clearly, Mr. Bryant's "unequivocal" representation that Intervenor was the woman present at the closing of November 22,1999, was substantially impeached by his testimony. Moreover, as Mr. Farrell argued to this Court on October 1, 2003, Mr. Bryant has a compelling professional interest in upholding the integrity of his notarization of a signature on November 22, 1999, as that of Intervenor. In light of the failure to produce an original prior deed to the property in proof of rightful ownership and in view of his inability to communicate directly with the purported grantor who spoke only Chinese with other parties present, it is apparent that Mr. Bryant did not take appropriate care to verify the identity of the grantor of the property.
 Plaintiff has failed to demonstrate that a serious issue of fact requires the denial of the motion for summary judgment. Plaintiff's fanciful speculation that Intervenor collaborated with her son to defraud the mortgagee of funds and then engaged the Office of the District Attorney to advance the fraud is without any evidentiary support. All of the facts and issues recited by Plaintiff were brought out as part of the criminal prosecution and are not "newly discovered". Moreover, as heretofore noted, as an identified complainant in the criminal prosecution, Plaintiff 's participation was actually solicited both by the District Attorney and Intervenor. Plaintiff had a duty to come forward with any evidence of such alleged fraud at that time, so as to prevent a fraud upon the Court. It chose not to do so.
Finally, Plaintiff insists that it should not be estopped by the prior adjudication of the validity of its mortgage because it is not in privity with any party thereto and was not afforded a full and fair opportunity to contest the decision.
As Plainitff itself acknowledges, citing Gilberg v. Barbieri, 53 NY 2d 285, 292 (1981): " The question as to whether a party has had a full and fair opportunity to contest a prior determination cannot be reduced to a formula." "[C]ollateral estoppel is a flexible doctrine which can never be rigidly or mechanically applied." Id. The applicability of collateral estoppel must be decided upon an analysis of the facts and realities of the particular case. Buechel v. Bain, 97 NY2d 295, 304 (2001). As previously noted, the proponent of collateral estoppel has the burden to establish identity of issue, which Intervenor has clearly met. The second necessary [*6]component to the application of collateral estoppel is that the party against whom the estopppel is sought have been afforded a full and fair opportunity to litigate the issue. The burden to establish the absence of such opportunity is upon the party seeking to avert the estoppel. Ryan v. New York Telephone Co., supra, 62 NY2d at 501; Sucher v. Kutscher's Country Club, 113 AD2d 928, 929 (2d Dep't, 1985).
While Plaintiff bases its argument upon its contention that it is not in privity with Defendant Tin P. Chu who was convicted in the criminal prosecution, in fact, having derived its rights to foreclose upon the property directly from the execution of the mortgage by Tin Chu, Plaintiff was in privity with Mr. Chu as to the validity of Mr. Chu's title to the property. However, as assignee of the rights of the Defendant's mortagee , Plaintiff's interest is adverse to that of Defendant Tin Chu and, as a practical matter, since Defendant had confessed to his forgery of the deed and mortgage, Plaintiff could not be said to have had a full and fair opportunity to litigate the merits based upon Defendant Chu's defense to the criminal charges. However, Plaintiff's direct predecessor in interest, from which its rights as mortagee are derived, WMC, was a named complainant in the criminal prosecution. Accordingly, although the criminal case was prosecuted by the People of the State of New York, Plaintiff was in privity with complainant WMC upon whose behalf some of the charges were brought and its interests were ably represented by the District Attorney. See Buechel v. Bain, supra, 97 NY2d at 304: "In the context of collateral estoppel, privity does not have a single well-defined meaning . . . '[It] includes those who are successors to a property interest, those who control an action although not formal parties to it, [and] those whose interests are represented by a party to the action . . .'," citing, Matter of Juan C. v. Cortines, 89 NY2d 659, 667 (1997).
More compelling, however, is the fact that this Plaintiff, not WMC, was expressly advised, even before Defendant was indicted, of Defendant's arrest and prosecution and was alerted that such prosecution might have an adverse affect upon Plaintiff's rights. Plaintiff was directly requested through its counsel, Certilman Balin Adler & Hyman, LLP, first by Intervenor's counsel, then by the District Attorney in writing, and finally by this Court, to participate in the pending criminal action. Plaintiff failed (or refused) to respond to any of these pleas. After the verdict, present counsel for Plaintiff was substituted for counsel that had commenced the foreclosure action. This Court takes judicial notice from personal experience and court records of the hundreds, if not thousands, of mortgage foreclosures instituted annually by the firm of Certilman Balin Adler & Hyman, LLP which is one of the most experienced firms handling such cases in the State of New York. The substitution of counsel herein was clearly not based upon the lack of competence of prior counsel, but is more likely because Plaintiff is seeking recovery of its loss upon a title policy issued by Washington Title Insurance Company represented by present counsel. Plaintiff's strategic decision to forego participation in the criminal action and its substitution of counsel will not relieve Plaintiff of the consequences of its failure to act timely.
In determining whether a party sought to be estopped was afforded a full and fair opportunity to contest an issue in a prior litigation, the Court must consider the nature of the prior forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate, the extent of actual litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation. [*7]Ryan v. New York Telephone Co., supra, 62 NY2d at 501. As heretofore noted, the issue in the criminal prosecution was clearly dispositive of the issue in this foreclosure action and Plaintiff was expressly so advised at the very beginning of the prosecution. The case was thoroughly investigated and ably tried by the District Attorney of Kings County in the Supreme Court and a verdict was reached upon a burden of proof substantially greater than that applicable to a civil action. All of the facts set forth by Plaintiff as "newly discovered" were available to Plaintiff at the time of the criminal prosecution and indeed, such evidence was presented at the criminal trial. Had Plaintiff responded to the pleas of the District Attorney, counsel for Intervenor and even the Court to appear and participate, subsequent litigation of the matter, which Plaintiff could easily foresee, would have been averted.[FN2] Finally, Plaintiff must have been aware that "a different judgment in [subsequent litigation like the pending foreclosure action] would destroy or impair rights or interests established by the [criminal prosecution]" See Ryan, id. at 501. If Plaintiff were able to establish that Intervenor was complicit in the forgery and larceny tried at Criminal Term, the testimony of Wing Kwan Lee Gee at that trial would be substantially impeached and the criminal conviction would be subject to reversal.
Collateral estoppel is an equitable doctrine intended to avoid multiple litigation of the same issue between the same parties or those in privity with those parties. As a matter of public policy, it is meant to conserve the resources of the courts and the litigants and assure finality and consistency with respect to a particular material issue. Gitberg v. Barbieri, supra, 53 NY2d at 291; Buechel v. Bain, supra, 97 NY2d at 304. It is apparent to this Court that Plaintiff made a deliberate choice not to participate in the criminal prosecution of Defendant Tin Chu, though afforded several opportunities to do so. Clearly, Plaintiff's interest was not in obtaining a conviction against the Defendant from whom Plaintiff derived its only rights to foreclose upon 2246 E. 12th Street. However, knowing that the validity of its contractual rights would necessarily be determined in the criminal case and the "potential serious adverse consequences of the litigation", Plaintiff "cannot be rewarded for [its] conscious, tactical decision not to take a more active role in that litigation by now allowing the very same issues and facts to be relitigated". Buechel v. Bain, supra, 97 NY2d at 305.
Intervenor's motion for summary judgment dismissing the complaint is granted. Giving full effect to the prior adjudication under Kings County Indictment No. 2350, the deed purportedly executed by Intervenor and the mortgage executed by Defendant Tin Chu on November 22, 1999 are declared to be null, void and of no legal effect and any and all previously granted real property tax exemptions appurtenant to the legitimate titled in Intervenor reflected in the valid deed of February 5, 1975, shall be reinstated retroactive to November 22, 1999.
The foregoing constitutes the decision and order of the Court.
[*8]
E N T E R :
 
 J.S.C.
Decision Date: March 25, 2004
Footnotes

Footnote 1:During the pendency of the instant application, Assistant District Attorney Farrell appeared and was asked to further investigate whether his office intended to prosecute Intervenor as a participant in creating the allegedly forged documents as Plaintiff contends (See Transcript of October 1, 2003). Ultimately, upon further investigation, the Office of the District Attorney declined such prosecution. Mr. Farrell, who had also been requested to assist in producing Mr. Bryant, indicated that he had difficulty locating or communicating with him and that Mr. Bryant failed to appear for a pre-arranged appointment at the Office of the District Attorney on November 10, 2003.

Footnote 2:In fact, Counts 2 and 4 of Indictment No. 2350/02 in which Defendant was accused of stealing the property of and defrauding complainant WMC were not presented to the jury because of the lack of co-operation of Plaintiff in providing the evidence necessary to make out a prima facie case as to these allegations.