■ LUMBERMENS MUTUAL CASUALTY COMPANY, as Subrogee of MICFAB's FOODS, INC., Respondent, v 606 RESTAURANT, INC., Doing Business as MI PEQUENA ESPANA, Appellant, and BROADWAY 207 REALTY CORP., Respondent. [819 NYS2d 511]—

Order, Supreme Court, New York County (Marcy S. Friedman, J.), entered October 7, 2005, which, to the extent appealed from as limited by the briefs, denied the motion of defendant 606 Restaurant for summary judgment dismissing the complaint on grounds of collateral estoppel, unanimously reversed, on the law, with costs, the motion granted and the complaint dismissed as against 606 Restaurant. The Clerk is directed to enter judgment accordingly.

Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity (*see Buechel v Bain*, 97 NY2d 295, 303 [2001], *cert denied* 535 US 1096 [2002]; *Ryan v New York Tel. Co.*, 62 NY2d 494, 500 [1984]). "Two requirements must be met before collateral estoppel can be invoked. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and there must have been a full and fair opportunity to contest the decision now said to be controlling. The litigant seeking the benefit of collateral estoppel must demonstrate that the decisive issue was necessarily decided in the prior action against a party, or one in privity with a party. The party to be precluded from relitigating the issue bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination" (*Buechel v Bain*, *supra*, 97 NY2d at 303-304 [citations omitted]).

As stated by the Court of Appeals in *Watts v Swiss Bank Corp.* (27 NY2d 270, 277 [1970]), "[T]he term privity does not have a technical and well-defined meaning. It denominates a rule, however, to the effect that under the circumstances, and for the purposes of the case at hand, a person may be bound by a prior judgment to which he was not a party of record. It includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action . . . . The character and extent of the participation in litigation which will in legal effect make one a party is most often an issue of fact. As a consequence, no single fact is determinative but all the circumstances must be considered from which one may infer whether or not there was participation amounting to a sharing in control of the litigation" (citations omitted).

Application of the foregoing principles to the facts of this case clearly requires that the doctrine of collateral estoppel should have been applied to bar Lumbermens' present subrogation claim against 606 Restaurant. The motion to dismiss the complaint as against 606 Restaurant should have been granted.

The facts and the procedural background of this action are not in dispute, the only question being whether plaintiff insurer should be collaterally estopped from bringing this action as subrogee of its insured, which was a party to a previous action in which a jury found that 606 Restaurant was not liable to another similarly situated party.

Plaintiff's subrogor (MicFab's Foods, doing business as McDonalds) and 606 Restaurant, doing business as Mi Pequena Espana, are adjacent tenants in a row of stores owned by defendant Broadway 207 Realty Corp. On November 25, 1999, a fire allegedly started in Mi Pequena Espana and spread to the adjacent McDonalds, causing extensive damage and loss of income for which plaintiff insurer, Lumbermens Mutual Casualty Company, paid MicFab's $1,277,981.70. In January 2000 another tenant in the premises, Inwood Security Alarm, and its insurer, Tower Insurance Company, commenced subsequently consolidated actions against the landlord (Broadway 207), MicFab's and 606 Restaurant, alleging that the fire had started either in Mi Pequena Espana or McDonalds and spread to Inwood Security's premises. Inwood Security sought $200,000 from MicFab's for property damage and $20,000 per month for lost business. Tower sought the $34,500 it paid Inwood Security for damage to its inventory and equipment as a result of the fire. Each of the defendants answered and asserted cross claims

against the others. In November 2002, Lumbermens, as MicFab's subrogee, commenced this action against 606 Restaurant and Broadway 207, asserting, as relevant to this appeal, that the fire was caused by 606 Restaurant's negligence. 606 Restaurant cross-claimed against Broadway 207 for indemnification and counterclaimed against Lumbermens and MicFab's based upon the latter's negligence in maintaining its premises.

The Inwood Security actions were initially based upon the Fire Marshal's report, which indicated that the fire originated in McDonalds and that the cause of the fire was "probably heat from electrical Bx cable." However, during the course of discovery, MicFab's produced two expert reports which indicated that the fire was not caused by the electrical system, but most likely by pyrolysis (heat transfer) resulting from the installation of a grill hood duct too close to the wood joints in the wall of 606 Restaurant's premises. One of MicFab's experts stated that the fire originated within 606 Restaurant and was caused by the heating and eventual ignition of the wall adjacent to the grill duct located at the northwest corner of the restaurant.

Prior to the April 2004 trial of the Inwood Security actions, MicFab's, which was represented by counsel retained by its liability insurance carrier, settled with plaintiff Inwood Security and, as part of the settlement, Inwood Security was permitted to use MicFab's expert. In late April 2004, the Inwood Security actions went to trial, at which time, Tower Insurance, but not Broadway 207 and 606 Restaurant, agreed to dismissal of its claim against MicFab's, and the court was advised that Lumbermens had this separate subrogation action pending against 606 Restaurant and Broadway 207. In response to 606 Restaurant's argument that whatever happened in that trial would have res judicata or collateral estoppel effect in Lumbermens' subrogation action, the court opined that MicFab's would be bound by any decision in the Inwood Security trial. Nevertheless, although counsel for MicFab's, pursuant to the trial court's direction, appeared at the Inwood Security trial and participated in jury selection, upon subsequent argument by MicFab's counsel, MicFab's was permitted simply to monitor the trial. Thereafter, following a two-week trial, the jury found for defendants 606 Restaurant and Broadway 207. Prior to the submission of the case to the jury, 606 Restaurant and Broadway 207 voluntarily withdrew their cross claims against MicFab's.

606 Restaurant then moved in this action for leave to serve an amended answer raising the defense of collateral estoppel and for summary judgment dismissing the complaint against it on those grounds. It argued that Lumbermens would be retry-

ing the same case against the same defendants, upon the same theory and using the same expert, that as a subrogated carrier, Lumbermens Mutual could claim no greater right to pursue 606 Restaurant in this action than could MicFab's, and that MicFab's had no such right since it chose to settle and withdraw from active participation in the Inwood Security trial and literally gave its theory and expert to the plaintiffs therein. "Thus," 606 Restaurant argued, "the theory upon which Lumbermens will have to try this action has already been fully litigated and determined against McDonalds and Lumbermens' position." It further argued that collateral estoppel should apply here; otherwise, a retrial of the issue of the cause of the fire could result in conflicting verdicts and would be unduly costly to both the defendants and the court.

Lumbermens responded that it was not a party to the Inwood Security action, and it is not seeking to relitigate any issues in this case. Rather, it maintained that its claim against 606 Restaurant in this action bears no relation to 606 Restaurant's indemnification claim against MicFab's for any liability arising out of Inwood Security's claims against 606 Restaurant. According to Lumbermens, the issue decided in the Inwood Security action was whether MicFab's would be partly liable for contribution if 606 Restaurant were found liable for Inwood Security's injuries, while the issue to be decided in this action is whether 606 Restaurant caused Lumbermens' damages.

However characterized by Lumbermens, both actions require determination of the same essential issue: whether 606 Restaurant negligently caused the fire or contributed to its spread. A comparison of Lumbermens' complaint in this action (breach of 606 Restaurant's duty to exercise reasonable care in the use and occupancy of its premises) and MicFab's defense and cross claim against 606 Restaurant in the Inwood Security actions (if MicFab's is liable for Inwood Security's damages, "said damages were sustained in whole or in part by reason of the negligence of 606 Restaurant") clearly demonstrates the identity of issues. Lumbermens goes on to argue that an unrelated party such as Inwood Security could not, by losing its trial, somehow preclude Lumbermens from pursuing its subrogation claim. We disagree and accordingly reverse and grant 606 Restaurant's motion in its entirety.

Lumbermens, which is clearly in privity with its insured, MicFab's, is basically seeking to try the same case again, albeit with different damages, against 606 Restaurant. Lumbermens certainly had a full and fair opportunity to contest the issue of 606 Restaurant's liability before the Inwood Security jury, but

declined to do so. Although MicFab's had settled with Inwood Security months before the trial, codefendants, 606 Restaurant and Broadway 207 had not settled, and thus there were active cross claims against MicFab's during the trial. Despite the fact that Lumbermens filed its complaint in the subrogation action about 18 months before the Inwood Security trial, Lumbermens never moved to intervene in the Inwood Security actions, and it never moved to consolidate the within subrogation action with the Inwood Security actions, despite the fact that it could have done so and then argued its theories of liability before the Inwood Security jury. It chose instead to stand on the sidelines and permit Inwood Security and Tower Insurance to be its stalking horses, thus making a strategic choice not to join the Inwood Security actions and to conduct little or no discovery in this subrogation action prior to the Inwood Security trial. Indeed, counsel for Lumbermens acknowledged as much in his November 10, 2003 status report when he acknowledged that "if liability is established [in the Inwood Security actions] against 606 Restaurant Corp., from whose premises the fire originated, we may be in a position to obtain Summary Judgment on the negligence issue, by way of collateral estoppel, and move directly to an inquest on damages." "[T]he law will not sanction such tactical maneuvering at the price of efficiency and consistent judgments where parties have not shown that they lacked a full and fair opportunity to be heard" (*Buechel v Bain, supra,* 97 NY2d at 309).

Accordingly, since the issue of 606 Restaurant's negligence, upon which Lumbermens would be proceeding, has been fully litigated and could easily have also been tried by MicFab's, plaintiff is collaterally estopped from relitigating the decisive issue that has already been decided in the Inwood Security actions. We also find no merit to Lumbermens' arguments seeking to minimize the amount in issue in the Inwood Security trials as opposed to the amount paid by it under MicFab's property damage and lost income policy, and questioning the efforts of the attorney for MicFab's, who was provided by its liability insurer. Concur—Buckley, P.J., Andrias, Saxe, Friedman and Williams, JJ.