ASTORIA GENERAL CONTRACTING CORP. and Dimitrios Koutsoukos, Plaintiffs,

v.

The OFFICE OF the COMPTROLLER OF the CITY OF NEW YORK; Scott M. Stringer, as Comptroller of the City of New York; John C. Liu, as former Comptroller; Samuel Pepper, as Wage Investigator, New York City Department of Education; David N. Ross, as Executive Director of the New York City Department of Education; Jay Miller; John Shea; Jose Quiroz; Johnny Cisneros; Thomas Fennell; and Volkert Braren, Defendants.

15 Civ. 1782 (NRB)

United States District Court, S.D. New York.

Signed January 26, 2016
Filed January 27, 2016

Joseph O. Giaimo, Giaimo Associates, LLP, Kew Gardens, NY, for Plaintiffs.

Scott Brian Glotzer, NYC Law Department, Office of the Corporation Counsel, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD,
UNITED STATES DISTRICT JUDGE

Defendants the Office of the Comptroller of the City of New York (the "Comptroller"), Scott M. Stringer as Comptroller of the City of New York, John C. Liu as former Comptroller, Samuel Pepper as Wage Investigator for the New York City Department of Education ("DOE"), David N. Ross as Executive Director of the DOE ("Ross"), Jay Miller ("Miller"), John Shea ("Shea"), Jose Quiroz ("Quiroz"), Johnny Cisneros ("Cisneros"), Thomas Fennell, and Volkert Braren ("Braren," and collectively, "defendants") move to dismiss the complaint of plaintiffs Astoria General Contracting Corp. ("AGC") and Dimitrios Koutsoukos ("Koutsoukos," and together with AGC, "plaintiffs"). Plaintiffs allege that defendants conspired to unlawfully terminate AGC's contracts with the DOE and withhold payments owed to AGC on those contracts in violation of plaintiffs' due process rights. We dismiss plaintiffs' claims to the extent that they seek injunctive and declaratory relief that would interfere with plaintiffs' ongoing state proceeding pursuant to *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and stay the remainder of the action.

## BACKGROUND [1]

 AGC is a general contractor organized as a corporation under the laws of the State of New York with its principal office in Queens. Koutsoukos is AGC's sole officer and shareholder. In 2007, AGC entered into three contracts with the DOE to repair rolling doors in New York City public schools. In 2012, DOE conducted an investigation into AGC, during which three of AGC's employees—John Sanango, Oscar Sanango, and Jaime Zumbay ("Zumbay")—signed complaints alleging underpayment of wages. Pursuant to that investigation, the Comptroller ordered the DOE to withhold payments to AGC on its contracts pending the Comptroller's determination of whether AGC had violated New York State's prevailing wage law.

In December 2012, the DOE terminated AGC's contracts after determining that AGC violated various contractual provisions, including those requiring it to pay prevailing wages. The following year, the Comptroller brought administrative proceedings at the New York City Office of Administrative Trials and Hearings ("OATH") against plaintiffs for violations of the prevailing wage law. Currently pending in state court are (1) plaintiffs' appeal of a New York State Supreme Court decision dismissing plaintiffs' claims brought against the DOE and Ross for, *inter alia*, violation of their due process rights and breach of contract, and (2) plaintiffs' Article 78 proceeding challenging the Comptroller's determination and order, issued after the instant motion to dismiss was fully briefed, finding that plaintiffs willfully violated New York's prevailing wage law. Below, we provide an overview of the prevailing wage law before setting forth plaintiffs' allegations and addressing the pending state court proceedings.

Before doing so, we note that while plaintiffs' due process claims generally do not distinguish between the conduct of the DOE and the Comptroller, the two entities are each alleged to have initiated proceedings against plaintiffs that, even if linked by an overarching conspiracy, resulted in

---

1. Except where noted, the following facts are drawn from plaintiffs' complaint filed March 10, 2015 (the "Complaint" or "Compl."), and the exhibits attached thereto. With their motion, defendants include the declaration of Scott Glotzer ("Glotzer Decl."), and the parties dispute whether the Court may consider the exhibits attached to that declaration. At the motion to dismiss stage, a "court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.2010), as well as facts "drawn from matters of which we may take judicial notice," *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 149 (2d Cir.2013), *cert. dismissed,* —— U.S. ——, 133 S.Ct. 2823, 186 L.Ed.2d 881 (2013). We "may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Int'l Star*

*Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir.1998) (internal quotation marks omitted). Some of the disputed exhibits are either incorporated by reference into the Complaint or documents of which we may take judicial notice. For purposes of this motion, we take judicial notice of the plaintiffs' third-party summons with notice and third-party complaint filed in New York Supreme Court, Queens County, and the decision dismissing plaintiffs' claims in that action, *see* Glotzer Decl., Exs. 8, 9, and the publicly available records of the Comptroller's prevailing wage proceedings against plaintiffs, *see Evans v. The New York Botanical Garden*, No. 02 Civ. 3591 RWS, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) (courts may "take judicial notice of the records of state administrative procedures, as these are public records"). We may also consider Contract No. 20089871153, one of the three contracts between AGC and DOE at issue. *See* Glotzer Decl., Ex. 2.

distinct harms: the DOE investigated AGC and terminated its contracts and the Comptroller ordered the DOE to withhold AGC's payments for completed work and brought prevailing wage charges against plaintiffs. Accordingly, where relevant, we distinguish between plaintiffs' allegations related to the termination of contracts and those related to the withheld funds and prevailing wage proceedings.

## I. New York State's Prevailing Wage Law

The New York State Constitution and New York Labor Law provide that laborers employed by public works contractors must be paid the "prevailing rate of wages" for their trade or occupation in the New York locality where the work is done. N.Y. Lab. Law § 220(3)(a); *see also* N.Y. Const., Art. I, § 17. In New York City, § 220 empowers the Comptroller to set the prevailing wage rates for employees of contractors performing public works projects and building service work for City agencies; investigate, either *sua sponte* or upon a worker's complaint, a failure to pay prevailing wages; and, after a hearing, make determinations regarding possible violations. *See* N.Y. Lab. Law §§ 220(3)(c), 220(5)(e), 220(7), 220(8), 220–b(2)(c). If upon investigation the Comptroller determines that workers have been paid less than the prevailing wage, the Comptroller may, prior to any hearing or administrative process, withhold payment on the contract in an amount sufficient to satisfy the payments that "appear to be due" to the workers, interest running from the date of the alleged underpayments, and a civil penalty that may be assessed on the alleged amount of underpayment. *Id.* §§ 220–b(2)(a), (c) & (d).

The Comptroller's § 220 hearings are conducted by OATH. *See* 44 R.C.N.Y. § 2–02. An administrative law judge ("ALJ")

oversees the hearing and issues a written report and recommendation to the Comptroller or his or her designee, who subsequently issues a decision adopting, rejecting or modifying the ALJ's findings and recommendation. *See id.* § 2–03(a), (c). The Comptroller's decision is subject to challenge in an Article 78 proceeding before the Appellate Division of the New York State Supreme Court. *See* N.Y. Lab. Law §§ 220(8), 220–b(2)(e).

## II. DOE's Investigations into AGC

In 2008, AGC received notice from the Comptroller of allegations that it had failed to pay prevailing wages to workers it employed on a contract with the DOE, but those charges were ultimately dismissed in 2010 after plaintiffs proved that they complied with the prevailing wage law. Compl. ¶¶ 19(e), 37; Compl., Ex. A. Plaintiffs contend that the 2012 investigation into AGC was the result of a conspiracy among the defendants to target AGC after the dismissal of the prior charges.

Most of plaintiffs' allegations of misconduct relate to defendant Cisneros. Cisneros was employed as an investigator for the DOE beginning in or about 2005 to 2007 and from 2010 to August 2013, and worked from 2007 to 2010 at the New York City Department of Transportation ("DOT"). Compl. ¶ 11. Although he testified at the OATH hearing that he began the investigation at issue here "after July 19, 2012," Cisneros had, despite working at the DOT at the time, interviewed John Sanango, Oscar Sanango, and Zumbay in 2008, and Oscar Sanango again in 2009. *Id.* ¶ 28 (internal quotation marks omitted). The Complaint includes the transcript of a phone call concerning Cisneros that was recorded in April 2014 between Koutsoukos and DOE project supervisor Donald Dross ("Dross") with Dross's permission. During that call, Dross described

a conversation he had with Cisneros and another DOE supervisor about a meeting of DOE borough managers that occurred prior to Cisneros being rehired by the DOE in 2010. According to Dross, at that meeting, Cisneros

> said that he planned to target certain uh contractors that *got away the first time* he was employed by the . . . Department of Education. And uh, he mentioned uh Astoria General and uh National Insulation and uh basically he said that uh *they wouldn't get away with it this time.*

Compl. ¶ 33 (second emphasis added).[2]

On August 10, 2012, after the second investigation into AGC began, Cisneros met with John Sanango, Oscar Sanango, and Zumbay in his car, where each employee signed a complaint alleging underpayment of wages. Compl. ¶ 50.[3] Citing excerpts from testimony at the OATH hearing, plaintiffs allege that Cisneros dictated the language and numbers in the complaints to the employees, and, in order to compel them to sign, told them that AGC's contracts with the DOE were about to be terminated, so that they would fear "having no means of support," and that AGC was not paying them enough. Compl. ¶¶ 50–63. John Sanango testified

at OATH that he had told Cisneros that he "felt well with the money" he was receiving, and Zumbay testified that he did not maintain a record of the hours he worked for AGC. *Id.* ¶¶ 56, 60. Koutsoukos himself testified to a conversation he had with John Sanango after the employees signed their complaints, during which Sanango explained that Cisneros had warned him that the DOE would not give AGC more work after AGC's contracts expired, and, asking if he thought "Koutsoukos will care what [will] happen to you or your family," said that if the employees signed, the DOE would "hold half a million dollar [*sic*] of [Koutsoukos's] money," to be divided among the three of them. *Id.* ¶ 57.

### III. *DOE Terminates its Contracts with AGC*

According to the Complaint, the DOE notified plaintiffs that AGC had failed to pay prevailing wages in a letter from defendant Miller to Koutsoukos dated October 2, 2012. Compl ¶¶ 34–36. The letter explained that investigators for the DOE's Division of School Facilities ("DSF") had determined that AGC violated its contracts in a number of ways, including by paying employees less than the prevailing wage.

---

2. The rest of the transcript provides in relevant part:

> [Koutsoukos]: Now let me ask you a question—After 40 years of service, what you think provoked them to do that for me
> [Dross]: I don't know—well—he was a, he was a newcomer, but uh he was strong to uh uh ya know uh they got away the first time so basically—he was going to see if he could catch them the second time. You know, he was coming to, to work, so uh . . .
> [Koutsoukos]: yes—so uh did anybody else you know besides you—buddy
> [Dross]: uh Mr. Rumbsfeld [Parmanand] and uh basically was uh you know uh there and uh Johnny [Cisneros] actually uh or John actually uh was talking to him also,

> and uh basically uh it was brought up in a meeting uh of borough managers and uh basically uhm addressed uhm in the meeting uh with [defendant Braren]. . . .
> [Koutsoukos]: Then what happened
> [Dross]: nothing
> [Koutsoukos]: okay, I means what they uhm I mean alright okay, so, just about that the whole thing correct?
> [Dross]: yeah pretty much.

Compl. ¶ 33.

3. While the Complaint alleges that this occurred on August 2, 2012, at Paragraph 50, it alleges August 10, 2012, at Paragraph 61. We note that the complaints filled out by the employees are dated August 10, 2012. *See* Glotzer Decl., Ex. 5.

Compl., Ex. C at 1–2.[4] Plaintiffs were given ten business days to "submit a detailed written response to show cause why AGC should not be declared in default." *Id.* at 3.

By letter dated October 23, 2012, plaintiffs responded to the alleged violations and requested some additional information (the "October 23 letter"). Compl., Ex. D. In another letter dated December 6, 2012, they complained that they had not heard from the DOE "despite the fact that the DOE is withholding at least $480, 000 of AGC's earned funds" and had not been provided with the information requested in the October 23 letter (the "December 6 letter"). Compl., Ex. E.

The next day, defendant Shea, Chief Executive Officer of DSF, responded to plaintiffs' October 23 letter, explaining that the DOE had "additional personnel review the video and documentary records" and setting forth its findings. Compl., Ex. F. Shea wrote that "[t]he DOE's review of all the relevant information available, including our independent review of video evidence and witness statements, leads us to declare AGC in default and terminate the above-referenced contracts for cause." *Id.* at 3. The contracts were terminated on December 10, 2012. Compl. ¶ 41; Compl., Ex. J at 2.

On March 14, 2013, plaintiffs sent another letter to the DOE, asserting that they had not been provided an opportunity to "meet with the DOE or testify at a hearing concerning the DOE charges against AGC" and taking issue with the DOE's failure to provide "further evidence" concerning those charges, as requested by plaintiffs in their October 23 and December 6 letters. Compl., Ex. H at 1–2; Compl. ¶ 43. Shea responded by stating that plaintiffs could initiate a dispute in accordance with Section 4–10 of the DOE's Procurement Policies and Procedures, entitled "Resolution of Disputes Arising Out of Contract Administration." Compl. ¶ 44; Compl., Ex. I. He asked plaintiffs to confirm in writing whether they wished to have their letter considered a dispute pursuant to Section 4–10, id. which they did a few days later (the "April 4 letter"), Compl. ¶ 45; Compl., Ex. G. The DOE never responded to plaintiffs' April 4 letter and never provided them with the requested evidence or hearing with respect to the termination of their contracts. Compl. ¶ 45.

## IV. *The State–Court Third–Party Action*

After AGC's payments on its DOE contracts were withheld pursuant to the prevailing wage allegations, plaintiffs were sued by a subcontractor, Gym Door Repairs, Inc. ("Gym Door"). Compl. ¶ 25.[5] On April 8, 2013, plaintiffs commenced a third-party action in New York State Supreme Court, Queens County, against the DOE and Ross. Third–Party Summons with Notice, Glazer Decl., Ex. 8.

---

4. The October 2, 2012 letter itself indicates that it was not the first notice AGC and Koutsoukos received of the alleged violations, including the failure to pay prevailing wages: it states that "[o]n August 6, 2012, DSF sent notice to AGC of the aforementioned deficiencies"; that "AGC was invited to meet with representatives of the DOE on August 16, 2012 to discuss these matters"; and that at that meeting Koutsoukos denied responsibility for all the alleged deficiencies except for one. Compl., Ex. C at 3.

5. In 2008, the DOE had directed AGC, upon threat of termination of its contracts, to process applications to perform work for the DOE on behalf of Gym Door. Compl. ¶ 24. Even though it had no involvement with Gym Door, AGC was required to bill the DOE for Gym Door's work, for which AGC collected a 15% processing fee. *Id.*

Plaintiffs' third-party complaint, dated August 29, 2013, brought claims for, *inter alia*, violation of plaintiffs' due process rights under the Fourteenth Amendment and Article I, Section 6 of the New York State Constitution, and breach of contract. Third–Party Complaint, Glotzer Decl., Ex 8, at ¶¶ 1–29, 37–42. Plaintiffs alleged that the DOE violated their due process rights by, *inter alia*, confiscating AGC's funds, failing to respond to AGC's October 23, December 6, and April 4 letters, failing to afford AGC a hearing in connection with the termination of its contracts and the withholding of its funds, and failing to produce evidence of AGC's contractual violations. *Id.* at ¶¶ 1–29. Plaintiffs sought to recover the funds that were withheld as a result of the Comptroller's order. *Id.* at ¶¶ 28–29.

On June 30, 2014, the Supreme Court granted the DOE and Ross's motion to dismiss on the merits. *Gym Door Repairs Inc. v. Astoria Gen. Contracting Corp.*, 2014 WL 4092328, 2014 N.Y. Misc. LEXIS 3758 (Sup.Ct. Queens Co. June 30, 2014) ("*Gym Door*"). In dismissing plaintiffs' due process claims, the Court noted that the "funds allegedly owed to AGC have been withheld by the Comptroller," who was " 'statutorily authorized to withhold moneys due to a contractor pending an investigation regarding insufficient wages.' " *Id.* 2014 WL 4092328 at *2, 2014 N.Y. Misc. LEXIS 3758 at *3–*4 (quoting *Glenman Indus. & Commercial Contracting Corp. v. New York State Office of State Comptroller*, 75 A.D.3d 986, 987–88, 905 N.Y.S.2d 713, 715 (3d Dep't 2010)). The Court found that '[a]lthough a hearing has not been conducted as of the present time, the documentary evidence in this case establishes that there has been no violation of AGC's due process rights.' *Gym Door*, 2014 WL 4092328 at *2, 2014 N.Y. Misc. LEXIS 3758, at *4. The decision does not appear to address whether plaintiffs were due any process with respect to the termination of AGC's contracts, as distinct from the withholding of payments owed to AGC for completed work. Plaintiffs' appeal of the decision is pending in the Second Department. *See* Transcript of Oral Argument, December 21, 2015 ("Oral Argument Tr."), at 2.

## V. *The Prevailing Wage Proceeding*

At some point before December 6, 2012, the Comptroller ordered that outstanding payments for AGC's completed work on the contracts with the DOE be withheld. Compl., Ex. E. In December 2013, the Comptroller commenced a prevailing wage hearing against plaintiffs at OATH. The hearing was held over eleven days, during which plaintiffs were represented by counsel, presented witness testimony, and submitted documentary evidence. *See Office of the Comptroller v. Astoria Gen. Contracting Corp.*, OATH Index No. 1257/14, at 2 (July 20, 2015) ("*ALJ Report*"), *adopted*, Comptroller's Determination and Order (Sept. 2, 2015). The Comptroller's evidence included the testimony of the three AGC employees, Cisneros and defendant Quiroz, an investigator in the Comptroller's office who plaintiffs allege is a friend and co-conspirator of Cisneros. Although plaintiffs here contend that the OATH testimony of the AGO employees demonstrates that they had been coerced by Cisneros into signing their complaints, the ALJ noted that John Sanango and Zumbay each testified to filling out his complaint voluntarily. *Id.* at 11, 13.

The ALJ's report and recommendation was issued on July 20, 2015. The ALJ found AGC and Koutsoukos liable for willfully violating § 220 by failing to pay the prevailing rate of wages and supplemental benefits to John Sanango, Oscar Sanango, and Zumbay, and attempting to conceal the violation by submitting falsified payroll

documents. *Id.* at 33–34. The ALJ recommended that AGC be required to make restitution in the amount of the underpayment of wages and supplements plus interest and to pay a 25 percent civil penalty, and that AGC and Koutsoukos be barred from public work contracts within the State for five years. *Id.*

In finding that plaintiffs violated § 220, the ALJ considered their "defense[ ]" that "the investigation was a result of a conspiracy between the DOE and the Comptroller." *Id.* at 24. At the hearing, "Koutsoukos specifically argued that the investigation into AGC was personally motivated by Cisneros and Quiroz." *Id.* at 25. According to the ALJ, Koutsoukos contended that "this investigation was not the first time that Cisneros tried to get the complainants to sign a complaint against AGC," maintaining that in 2008 Cisneros had shown up at schools to ask the AGC employees questions and to get them to sign wage complaints. *Id.* He argued that now the employees "were lying because they expected to get $300,000 each based on what Cisneros told them." *Id.*

Finding Quiroz and Cisneros to be credible witnesses and the testimony of each of the AGC employees to be "generally reliable" and corroborated by each other's testimony, their complaints, and video and documentary evidence, the ALJ concluded that the "assertion that there was a conspiracy personally motivated by the investigators" was "without merit." *Id.* at 25–26. Moreover, based in part on plaintiffs' "failure to provide clear and complete records," the ALJ rejected their contention that the employees "worked far fewer hours than they had claimed." *Id.* at 26–27.

## VI. *Proceedings in This Case*

On March 10, 2015, plaintiffs commenced this action pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of their rights to due process under the Fourteenth Amendment and Article I, Section 6 of the New York State Constitution. They bring procedural and substantive due process claims, in addition to claims of a conspiracy to violate their due process rights, against all of the defendants. Specifically, plaintiffs argue that "defendants unlawfully and fraudulently conspired to terminate [AGC's] contracts with DOE and confiscated its funds," that they were denied "pre-deprivation safeguards" and adequate post-deprivation process, and that defendants' actions were "arbitrary and conscience-shocking." Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint ("Plaintiffs' Mem."), at 17–18. They seek an injunction enjoining the Comptroller from continuing with the hearing against them; ordering defendants to return to them the withheld payments; and directing defendants to take affirmative action to ensure that the "effects of unconstitutional and unlawful practices are eliminated and do not continue to affect[ ] plaintiffs' construction contract opportunities with the DOE and City of New York," in addition to compensatory damages and other related declaratory and injunctive relief. Compl., Prayer for Relief.

On July 2, 2015, defendants filed a motion to dismiss. In their briefs, both sides mentioned the July 20, 2012 report and recommendation of the ALJ. *See* Plaintiffs' Mem. at 7 n.2; Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss at 2 n.2. On September 2, 2015, the same day that the instant motion was fully briefed, the Comptroller issued its determination and order adopting the ALJ's report and recommendation in its entirety.

By letter dated December 8, 2015, this Court informed the parties that the Comp-

troller's decision likely had a significant impact on plaintiffs' claims in this action, both because plaintiffs had the opportunity to seek judicial review of the decision, and because it implicated the doctrine of issue preclusion, *see Univ. of Tenn. v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) ("[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." (internal punctuation, citation and quotation marks omitted)). The letter instructed plaintiffs to inform the Court whether they had sought review of the Comptroller's decision and whether they intended to modify or withdraw any of the claims in their Complaint. Plaintiffs responded that on October 23, 2015, they had commenced an Article 78 proceeding challenging the decision in the First Department, which proceeding was "currently pending." Letter from Joseph O. Giaimo, Esq., to Judge Naiomi Reice Buchwald, dated December 15, 2015, No. 15–CV–1782, Dkt. No. 17. Moreover, arguing that the issues before OATH had nothing to do with those before this Court, plaintiffs confirmed that they did not intend to modify or withdraw any of their claims. *See id.*

## DISCUSSION

### I. *Standard of Review*

■■■ On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiffs' favor. *See Krys v. Pigott,* 749 F.3d 117, 128 (2d Cir.2014). However, this tenet "is inapplicable to legal conclusions," as well as to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Instead, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

### II. *Younger Abstention*

#### A. Legal Standard

■■■ Animated by "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances," *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the abstention doctrine set forth in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is an exception to the general rule that federal courts must hear and decide cases within their jurisdiction. In *Younger,* the federal-court plaintiff requesting an injunction against enforcement of a state statute was at the time the defendant in a state criminal prosecution under that statute. The Supreme Court held that, absent a showing of bad faith, intent to harass, or some other unusual circumstance, federal courts should decline requests to enjoin state criminal prosecutions, "particularly ... when the moving party has an adequate remedy" in state court. 401 U.S. at 43, 91 S.Ct. 746. *Younger* has been extended to bar federal interference with certain state civil and administrative proceedings, *see, e.g., Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), and its requirements may be met by proceedings initiated by a municipal government, *see Univ. Club v. City of New York,* 842 F.2d

37 (2d Cir.1988) (plaintiff seeking to enjoin administrative investigation and potential enforcement action by New York City Commission on Human Rights).

Until recently, courts in this Circuit considered whether to abstain under *Younger* in light of certain factors discussed by the Supreme Court in *Middlesex*: whether there were ongoing state proceedings; whether the proceedings implicated important state interests; and whether there was an adequate opportunity to raise constitutional challenges in the proceedings. *See* 457 U.S. at 432, 102 S.Ct. 2515. However, in *Sprint Communications, Inc. v. Jacobs,* the Supreme Court, stressing that the "[c]ircumstances fitting within the *Younger* doctrine ... are exceptional," clarified that these factors are not "dispositive," but rather "*additional* factors appropriately considered by the federal court before invoking *Younger*." —— U.S. ——, 134 S.Ct. 584, 588, 593, 187 L.Ed.2d 505 (2013) (emphasis in original) (internal quotation marks omitted).

The *Sprint* Court limited *Younger*'s scope to three categories of pending state proceedings: (1) "ongoing state criminal prosecutions," (2) "certain civil enforcement proceedings," and (3) "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." 134 S.Ct. at 591 (internal punctuation and quotation marks omitted). As to the second category, the Court recognized that its "decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings 'akin to a criminal prosecution' in 'important respects.'" *Id.* at 592 (quoting *Huffman,* 420 U.S. at 604, 95 S.Ct. 1200). Such an action is distinct from the typical civil case: it is "characteristically initiated to sanction the federal plaintiff ... for some wrongful act," "a state actor is routinely a party to

the state proceeding and often initiates the action," and "[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges." *Sprint,* 134 S.Ct. at 592; *see also Dayton,* 477 U.S. at 624, 106 S.Ct. 2718 (state-initiated administrative proceedings to enforce state civil rights laws where formal complaint followed preliminary investigation); *Middlesex,* 457 U.S. at 433–434, 102 S.Ct. 2515 (state-initiated disciplinary proceedings against lawyer for violation of state ethics rules following preliminary investigation resulting in formal statement of charges).

**B. Application**

█ Plaintiffs have asked this Court to, *inter alia,* enjoin the prevailing wage hearing, direct defendants to release to them the payments withheld as a result of the Comptroller's order and to take affirmative action with respect to plaintiffs' ability to contract with the DOE and the City of New York, and award other injunctive and declaratory relief related to the prevailing wage proceeding. We conclude that to the extent plaintiffs' § 1983 claims seek such relief, those claims would interfere with the Comptroller's prevailing wage proceeding and must be dismissed.

Although defendants argue that abstention is warranted because the prevailing wage proceeding satisfies the three *Middlesex* factors, in light of *Sprint* we must first determine whether it is the type of proceeding to which *Younger* applies. We believe the salient characteristics of the proceeding brought against plaintiffs fit it squarely within the aforementioned category of civil enforcement actions resembling a criminal prosecution in important respects. The Comptroller, a department of the New York City government, investigated plaintiffs' alleged failure to pay prevailing wages to employees in violation of New York Labor Law, made a preliminary

finding that plaintiffs had violated the law, and filed a petition and initiated a proceeding before OATH with the purpose of determining if there had been violations, and, if so, the appropriate penalty. *See generally Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 193–95 (2d Cir.2002) (describing statutory framework for § 220 investigations and proceedings).

Moreover, the proceeding satisfies the three additional *Middlesex* factors. First, brought pursuant to New York Labor Law § 220, it is intended to enforce New York's constitutional mandate to protect the interests of laborers employed by public works contractors, and thus implicates an important state interest.[6] Second, while the OATH hearing itself is limited to determining whether the prevailing wage law has been violated, "it is sufficient under *Middlesex* ... that constitutional claims may be raised in state-court judicial review of the administrative proceeding." *Dayton*, 477 U.S. at 629, 106 S.Ct. 2718. In their Article 78 proceeding in the First Department, plaintiffs may "mount constitutional challenges to the [Comptroller's] investigation and administrative proceeding." *Diamond "D"*, 282 F.3d at 194 (citing N.Y. C.P.L.R. § 7803(3)); *see Alca Indus. Inc. v. McGowan*, 258 A.D.2d 704, 704–05, 685 N.Y.S.2d 814, 815 (3d Dep't 1999) (considering, in Article 78 proceeding brought pursuant to §§ 220 and 220–b, contractor's claim that due process was violated by inadequate notice of charges prior to hearing). Third, to the extent that *Younger*'s application is measured from the date of the filing of the federal complaint, *see Hansel v. Town Court*, 56 F.3d 391, 393 (2d Cir.1995) (*Younger* applies if the state prosecution was pending at time of filing of federal action), the administrative proceeding was ongoing when the Complaint was filed on March 10, 2015, months before the Comptroller issued its order.

 The fact that the Comptroller has now issued that order does not preclude abstention. Pursuant to §§ 220 and 220–b, an Article 78 proceeding constitutes an aggrieved party's method of reviewing the Comptroller's order; while review is pending, the order is not final and enforceable against a contractor and the Comptroller may not pay claimant-employees out of the contractor's withheld funds. "For *Younger* purposes, the State's trial-and-appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in mid-process would demonstrate a lack of respect for the State as sovereign." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 369, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("*NOPSI*"). The Supreme Court has twice assumed, without deciding, that "these principles apply equally where the initial adjudicatory tribunal is an agency—*i.e.*, that the litigation, from agency through courts, is to be viewed as a unitary process that should not be disrupted, so that federal intervention is no more permitted at the conclusion of the administrative stage than during it." *Id.*; *see Sprint*, 134 S.Ct. at 592. Given that the administrative proceeding was ongoing at filing and plaintiffs have now chosen to challenge the Comptroller's order, we believe this Court's intervention would arrive "mid-process" and disregard the deference owed to state procedures. *See Gonzalez v. Waterfront Comm'n of the N.Y. Harbor*, 755 F.3d 176, 183 (3d Cir. 2014) (assuming that state court review of disciplinary hearing constituted part of

---

**6.** Notably, the Second Circuit has, pursuant to *Younger*, vacated a district court's injunction of ongoing prevailing wage proceedings, although the parties in that case had agreed that the *Middlesex* factors were satisfied. *See Diamond "D"*, 282 F.3d at 198, 202.

"unitary process" and finding *Younger* abstention appropriate); *Fund v. City of New York*, No. 14 CIV. 2958(KPF), 2014 WL 2048204, at *9 (S.D.N.Y. May 19, 2014) ("fairest reading" of *Sprint* and *NOPSI* is "that when state or local administrative proceedings are subject to state-court review, it is not appropriate for a federal court to interfere in the dispute until the federal plaintiff has exhausted the possibility of remedy in state court").

In response to defendants' abstention argument, plaintiffs contend only that this Court is generally obliged to entertain claims over which it has jurisdiction and that they are not required to exhaust state remedies prior to bringing § 1983 claims. While typically true, these arguments are unavailing where *Younger*'s requirements are met.

 To the extent that the allegations in the Complaint implicate *Younger*'s exceptions, an argument not advanced by plaintiffs, we find them inapplicable. As discussed above, *Younger* explained that federal courts may entertain claims from which they should otherwise abstain upon a showing of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." 401 U.S. at 54, 91 S.Ct. 746. With respect to the "bad-faith" exception, the federal court's inquiry is centered on "the subjective motivation of the state authority in bringing the proceeding": plaintiffs invoking the exception "must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Diamond "D"*, 282 F.3d at 199. Generally, the party bringing the state action "must have no reasonable expectation of obtaining a favorable outcome." *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir.1994).[7]

While the Complaint contains many conclusory references to defendants' "conspiracy to violate plaintiff's due process rights" by "charg[ing] plaintiff with a violation of the prevailing wage law," Compl. ¶ 19(e), it contains few factual allegations relevant to the bad-faith inquiry. Plaintiffs make much of Cisneros's announced intention to "target certain ... contractors that got away the first time he was employed" by the DOE and who "wouldn't get away with it this time." *Id.* ¶ 33. However, that statement does not suggest that the DOE initiated its investigation, which appears to have led to the Comptroller's investigation and charges, based on animus or some other impermissible motivation. Instead, Cisneros's reference to contractors that "wouldn't get away with it this time" evinces a legitimate intent of targeting those whom he perceived as violating the law and escaping sanction.

 Plaintiffs also allege that Cisneros had interviewed AGC's employees even when he was not working at the DOE, and ultimately compelled them to sign complaints with "dollar amounts and hours computed entirely" by him, *id.* ¶ 63, but do not allege facts suggesting bad faith on the part of the Comptroller's office, which ac-

**7.** The Supreme Court has provided two examples of "exceptional circumstances" that also require a federal court to avoid abstaining even if *Younger*'s conditions are met: first, when a state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it," *Younger*, 401 U.S. at 53–54, 91 S.Ct. 746 (internal quotation marks omitted); and second, when the state administrative agency "was incompetent by reason of bias to adjudicate the issues pending before it," *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). Neither circumstance is alleged here.

tually brought the prevailing wage proceeding.[8] Moreover, the allegations as to Cisneros's role in securing the employees' complaints, based entirely on testimony elicited at OATH, *see* Compl. ¶¶ 50–63, are bound up in issues that may be subject to challenge in the ongoing state proceeding. As discussed, the ALJ rejected plaintiffs' contentions that Cisneros and Quiroz were driven by personal animus to conspire against AGC, that AGC's employees were lying because they expected to be financially rewarded, and that the employees worked far fewer hours for AGC than they claimed. *See ALJ Report,* OATH Index No. 1257/14, at 24–27. In addition, the ALJ credited the testimony of the AGC employees—two of whom the ALJ noted testified to filling out complaints voluntarily—as to their work for AGC, and found their accounts to be supported by both their complaints and other evidence. *Id.* at 11, 13, 25–27. Plaintiffs do not contend that the ALJ was biased,[9] or that they are precluded from raising these arguments in the pending Article 78 proceeding.[10] "[W]here such state remedies are available, 'a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.'" *Diamond "D",* 282 F.3d at 202 (quoting *Pennzoil v. Texaco,* 481 U.S. 1, 15, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)).

### III. *Remaining Claims*

While defendants contend that "*Younger* abstention applies and the Complaint should be dismissed," Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint at 6, "application of the *Younger* doctrine is inappropriate where the litigant seeks money damages for an alleged violation of § 1983," *Rivers v. McLeod,* 252 F.3d 99, 101–02 (2d Cir. 2001). In addition to various injunctive and declaratory relief, plaintiffs seek compensatory damages. The Second Circuit has held that dismissal of § 1983 claims for damages on *Younger* grounds is inappropriate "even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for declaratory and injunctive relief, but that a stay of the action pending resolution of the state proceeding may be appropriate." *Kirschner v. Klemons,* 225 F.3d 227, 238 (2d Cir.2000). Plaintiffs' § 1983 claims, irrespective of the relief sought, are based in large part on allegations concerning the DOE and Comptroller investigations into AGC and Cisneros's securing of AGC's employees' complaints, and, as discussed above, these are issues which were considered by the ALJ, and may be addressed by the First Department. Resolving the merits of the damages claims may thus risk interfering with an ongoing state proceeding. Accordingly we believe

---

**8.** While plaintiffs appear to allege that the testimony at OATH of Quiroz, the investigator at the Comptroller's office, demonstrates that he relied solely on the employees' complaints in his own investigation, *see* Compl. ¶ 52, they concede that Quiroz interviewed one of the employees, *see id.* ¶ 53 ("Quiroz's notes … were put into evidence and confirmed that other than his interview with Zumbay, he never spoke to the other claimants/employees prior to filing the prevailing wage complaint.").

**9.** At oral argument, plaintiffs suggested that the ALJ may have been biased because OATH is a City agency. *See* Oral Argument Tr. at 6–7; 30. We reject this argument, included nowhere in the Complaint or opposition brief and unsupported by any factual allegations.

**10.** Indeed, as discussed in its December 8, 2015 letter, this Court may be precluded from deviating from the above administrative findings, further suggesting that we should permit the First Department to hear plaintiffs' arguments in the first instance.

it is appropriate to stay the remainder of plaintiffs' claims.

 One note concerning the remaining claims. As discussed in the Court's December 8, 2015 letter, if plaintiffs' Article 78 proceeding is unsuccessful, this Court may be bound by the ALJ's findings as to Cisneros's investigation into AGC. At that point, it appears that none of the plaintiffs' remaining allegations would give rise to a cognizable due process claim.[11] To begin, as defendants argue, the issues of whether plaintiffs' due process rights were violated by the DOE's failure to respond to plaintiffs' letters and to produce further evidence of wrongful conduct, and by the absence of a hearing in connection with AGC's withheld funds prior to the OATH hearing, see, e.g., Compl. ¶¶ 45–47, 67, were necessarily decided against plaintiffs in their state court third-party action, see Gym Door, 2014 WL 4092328 at 2, 2014 N.Y. Misc. LEXIS 3758, at *4, and plaintiffs do not contend that they did not have a full and fair opportunity to contest those issues, precluding their relitigation here.[12]

More generally, divorced from accusations of investigative misconduct, plaintiffs' allegations do not support their procedural due process claims. As to the DOE's termination of AGC's contracts, plaintiffs do not possess a constitutionally protected property interest solely in the continuation of those contracts. See, e.g., Gizzo v. Ben–Habib, 44 F.Supp.3d 374, 385 (S.D.N.Y. 2014) (distinction between "ordinary" or "routine" government contract and "the type of government contract that gives rise to a protectible property interest is that the latter protects its holder from the 'state's revocation of a *status*, an estate within the public sphere characterized by a quality of either extreme dependence in

11. We do not mean to suggest that plaintiffs' allegations as to Cisneros's investigation are necessarily sufficient to sustain plaintiffs' due process claims. Defendants' motion does not directly engage with the allegations that Cisneros induced AGC's employees into fabricating wage complaints. We write only to explain that if the Court is ultimately precluded from considering those allegations, the arguments contained in defendants' motion would appear to require dismissal of all of plaintiffs' due process claims. Absent an underlying constitutional violation, plaintiffs' § 1983 conspiracy claims cannot stand either.

12. Federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1983). Issue preclusion will prevent relitigation of an issue under New York law if there is an " 'identity of issue which has necessarily been decided in the prior action and is decisive of the present action,' and the party to be estopped ... had a 'full and fair opportunity to contest the decision now said to be controlling.' " Kosakow v. New Rochelle Radiology

Associates, P.C., 274 F.3d 706, 730 (2d Cir. 2001) (quoting Schwartz v. Public Adm'r, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725 (1969)). An issue is " 'decisive in the present action' " if it "would prove or disprove, without more, an essential element of any of the claims set forth in the complaint." Curry v. City of Syracuse, 316 F.3d 324, 332 (2d Cir.2003). The party seeking the benefit of issue preclusion "must demonstrate that the decisive issue was necessarily decided in the prior action against a party, or one in privity with a party.... The party to be precluded from relitigating the issue bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination." Buechel v. Bain, 97 N.Y.2d 295, 304, 740 N.Y.S.2d 252, 257, 766 N.E.2d 914 (2001). While plaintiffs have appealed the dismissal of their third-party claims to the Second Department, "[u]nder New York law, 'the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding.' " DiSorbo v. Hoy, 343 F.3d 172, 183 (2d Cir.2003) (quoting Amica Mut. Ins. Co. v. Jones, 85 A.D.2d 727, 728, 445 N.Y.S.2d 820, 822 (2nd Dep't 1981)).

the case of welfare benefits, or permanence in the case of tenure, or sometimes both" (quoting *S & D Maint. Co. v. Goldin*, 844 F.2d 962, 966 (2d Cir.1988)) (emphasis in *S & D* )). As to the withholding of payments from AGC for completed work, even assuming that plaintiffs possess a property interest in such payments, the OATH hearing and opportunity for an Article 78 proceeding together satisfy due process. Indeed, the Supreme Court has ruled that where a subcontractor's payments were withheld by a state agency pursuant to state law based on the subcontractor's suspected violations of the state's prevailing wage law, the subcontractor had no "present entitlement" to the money it claimed it was owed; all it had was a claim that it complied with the law and was therefore owed the payments, which claim could "be fully protected by an ordinary breach-of-contract suit." *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196, 121 S.Ct. 1446, 149 L.Ed.2d 391 (2001); *see also Leed Indus. Inc. v. New York State Dep't of Labor ("POL")*, No. 09 CIV. 9456(JSR), 2010 WL 882992, at *3 (S.D.N.Y. Mar. 8, 2010) (administrative hearing allowing contractor to argue that it met its obligations under New York prevailing wage law and the availability of Article 78 proceeding are sufficient to ensure contractor due process).[13]

 Finally, to succeed on their substantive due process claims, plaintiffs "must demonstrate not only government action but also that the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir.2005) (internal quotation marks omitted). While it is far from clear that the allegations aimed at Cisneros's investigation would meet that standard, in their absence, the Complaint lacks any factual allegations of egregious conduct.

## CONCLUSION

For the foregoing reasons, the defendants' motion is granted in part and denied in part. Plaintiffs' claims for injunctive and declaratory relief related to the prevailing wage charges and funds withheld as a result of those charges are dismissed. The remainder of the claims are stayed pending the conclusion of the Article 78 proceeding and any subsequent appeal.

In addition, defendants request that the Complaint be dismissed against any individuals who have not been personally served to the extent they are sued in their individual capacities. Plaintiffs attach to their opposition brief affidavits of service on all of the individual defendants other than Cisneros and Braren. *See* Plaintiffs' Mem., Ex. B. They also attach two affidavits demonstrating attempts to serve Cisneros on March 26, 2015, and April 13, 2015, *see id.* and, contending that "[g]ood-faith efforts were made to serve defendant Cisneros at two different addresses but service would not be accepted," Plaintiffs'

---

13. In their brief, plaintiffs argue that the penalty of a five-year debarment deprived them of "future government opportunity," and combined with defendants' "false accusation of dishonesty," supports a procedural due process claim based on the deprivation of a liberty interest. Plaintiffs' Mem. at 20–21; *see generally Velez v. Levy*, 401 F.3d 75, 87–88 (2d Cir.2005) (explaining "stigma-plus" liberty-interest claim). However, the penalty of debarment, recommended by the ALJ and adopted by the Comptroller, is imposed only after plaintiffs have had the opportunity to challenge the Comptroller's charges: "[t]he combination of the [prevailing wage] hearing in the ... administrative proceedings, as well as the state law procedures for obtaining judicial review of the final determination in the administrative proceedings, satisfies due process," *DeMartino v. New York*, No. 12–CV–3319 (SJF), 2013 WL 3226789, at *8–*9 (E.D.N.Y. June 24, 2013).

Mem. at 26, request an extension of their time to serve Cisneros pursuant to Federal Rule of Civil Procedure 4(m). No affidavits of service have been filed on the docket, and we are unable to ascertain what, if any, efforts have been made since plaintiffs filed their opposition brief on August 12, 2015. Accordingly, by February 10, 2016, plaintiffs are ordered to submit an affidavit showing cause why they should be granted additional time to serve those defendants.