# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| HERTZ GLOBAL HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N22C-01-153 |
| | ) | PRW CCLD |
| ALTERRA AMERICAN INSURANCE | ) | |
| COMPANY N/K/A PINNACLE | ) | |
| NATIONAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: September 27, 2023
Decided: December 18, 2023

*Upon Hertz's Motion for Partial Summary Judgment,*
**DENIED.**

*Upon AAIC's Motion for Summary Judgment,*
**GRANTED.**

## <u>MEMORANDUM OPINION AND ORDER</u>

Jennifer C. Wasson, Esquire, Carla M. Jones, Esquire, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware, David P. Bender Jr., Esquire, Joseph G. Balice, Esquire, HAYNES AND BOONE, LLP, Costa Mesa, California, Benjamin L. Mesches, Esquire, HAYNES AND BOONE, LLP, Dallas, Texas, Brian Singleterry, Esquire, HAYNES AND BOONE, LLP, Fort Worth, Texas, *Attorneys for Plaintiff Hertz Global Holdings, Inc.*

Thaddeus J. Weaver, Esquire, DILWORTH PAXSON LLP, Wilmington, Delaware, Michael F. Perlis, Esquire, KAUFMAN BORGEEST & RYAN LLP, Woodland Hills, California, Matthew I. Schiffhauer, Esquire, KAUFMAN BORGEEST & RYAN LLP, Garden City, New York, *Attorneys for Defendant Alterra America Insurance Company n/k/a Pinnacle National Insurance Company*.

**WALLACE, J.**

Following an extensive SEC investigation, Hertz sought indemnification of its legal fees and costs from its primary and first-excess insurance providers. Both insurers denied coverage and Hertz sued to enforce the policies in the United States District Court for the Southern District of New York. Finding that Hertz failed to sufficiently plead it was seeking reimbursement for covered claims, the New York federal court dismissed the suit and awarded no coverage. Hertz now seeks indemnification from Alterra American Insurance Company ("AAIC"), the second excess insurer in its large insurance policy, via a single breach-of-contract claim.

In the parties' cross-motions for summary judgment, Hertz asks the Court to rule on two of AAIC's affirmative defenses (Affirmative Defenses #3 and #4)—whether: (1) "the [SEC Letter and SEC Order (collectively the 'SEC Matter')] constitutes a Securities Claim against Hertz for a Wrongful Act"; and (2) "the SEC Matter constitutes a Claim against Insured Persons for a Wrongful Act."[1] In turn, AAIC seeks summary judgment in its favor arguing that under multiple theories—(1) the SEC Matter constitutes neither a Securities Claim against Hertz, nor a Claim against an Insured Person, (2) Hertz failed to provide AAIC with proper notice, (3) collateral estoppel and res judicata apply to bar this subsequent action, and (4) the underlying insurance has not been exhausted—Hertz is not entitled to any

---

[1] Plaintiff's Motion for Partial Summary Judgment ("Hertz's Mot. for Partial Summ. J.") at 2 (D.I. 58).

relief.[2]

Because the Securities Claim against Hertz was previously decided by the New York federal court, collateral estoppel bars Hertz's attempt to relitigate the issue of whether the SEC Matter was covered as a Securities Claim against it—the New York federal court already found it wasn't covered.

And because the SEC Matter is directed against Hertz, the SEC Matter does not constitute a Claim against Insured Persons.

For those and reasons explained below, AAIC's Motion for Summary Judgment is **GRANTED** and Hertz's Motion for Partial Summary Judgment is **DENIED**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In November 2013, Hertz purchased a $200M insurance policy through a number of insurers via an "insurance tower."[3]

National Union Fire Insurance Company of Pittsburgh is the primary insurer and issued a policy in the amount of $15 million.[4]  U.S. Specialty Insurance Company issued the first-excess level of coverage also in the amount of $15 million.[5]

---

[2]   Defendant's Cross-Motion for Summary Judgment ("AAIC's Mot. for Summ. J.") at 19-51 (D.I. 69).

[3]   Hertz's Mot. for Partial Summ. J. at 2.

[4]   Hertz's Mot. for Partial Summ. J., Ex. A ("Primary Policy") § Declarations.

[5]   Hertz's Mot. for Partial Summ. J., Ex. B ("U.S. Specialty Policy") § Declarations.

U.S. Specialty's coverage is an excess, follow-form policy.[6]

AAIC issued the second-excess level of coverage also in the amount of $15 million.[7] Like the U.S. Specialty policy, AAIC's coverage is an excess, follow-form policy.[8]

From 2014 to 2018, Hertz incurred significant legal expenses defending an SEC investigation that ultimately concluded by way of settlement in lieu of formal charges.[9] Hertz incurred over $27 million in defense costs, which it first sought to recover from National Union and U.S. Specialty as the primary and first excess level insurers.[10] Both insurers denied coverage.[11]

## A. HERTZ SUES NATIONAL UNION AND U.S. SPECIALTY IN NEW YORK FEDERAL COURT.

Hertz sued National Union and U.S. Specialty in the United States District Court for the Southern District of New York asserting breach-of-contract claims.[12] The lawsuit was dismissed for failure to state a claim on which relief could be

---

[6] *See generally* U.S. Specialty Policy.

[7] Hertz's Mot. for Partial Summ. J., Ex. C ("AAIC Policy") § Declarations.

[8] *See generally* AAIC Policy.

[9] Hertz's Mot. for Partial Summ. J., Ex. H (Oct. 18, 2021 Ltr. from Richard P. McEvily to Sara Abrams) at 1-2.

[10] *Id.*

[11] *Id.*

[12] *See generally Hertz Global Hldgs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 530 F.Supp.3d 447 (S.D.N.Y. 2021).

granted.[13]  The New York federal court expressly declined to engage in a choice-of-law analysis, finding that the parties failed to brief the issue.  The federal court chose to apply New York law, however, because there was no real conflict between New York, Delaware, and Florida law.[14]  Although the court relied on New York case law, it found resolution of the issue required applying only "the most basic contract law principles."[15]

Hertz appealed that decision to the United States Court of Appeals for the Second Circuit.[16]  Following the parties' settlement of the dispute, the Second Circuit entered an order dismissing the appeal and issued a mandate.[17]

## B. HERTZ SEEKS RECOVERY FROM AAIC IN DELAWARE.

Hertz initiated this action asserting one count of breach of contract against AAIC.[18]  Hertz says conditions precedent to trigger AAIC's excess policy have been satisfied or waived, including exhaustion of the AIG policy (the "Primary Policy").[19]

Hertz also says that coverage has been triggered because the "SEC Proceeding

---

[13]  *Id*. at 454-59.

[14]  *Id*. at 453.

[15]  *Id*. ("Because only the most basic contract law principles are necessary for resolving this dispute, and the Court sees no variation in the states laws that would impact the analysis, the Court will resolve this motion applying New York law.").

[16]  *See* C.A. No. 22-853 (2d Cir.).

[17]  D.I. 112, Ex. 1 (C.A. No. 22-853 (2d. Cir.) Order and Mandate).

[18]  Complaint ("Compl.") (D.I. 1).

[19]  *Id*. ¶ 66.

constitutes both a Securities Claim as defined under [AAIC's] Excess Policy, as well as a Claim (as defined under the Policies) against Hertz's directors and officers."[20] Thus, Hertz seeks indemnification for the full policy amount to cover its costs and fees incurred defending the SEC investigation.[21]

## C. AAIC'S INTERPLEADER ACTION IN NEW YORK.

Before responding to the complaint here, AAIC filed a motion in the Southern District of New York seeking to enjoin all other litigation (including this action) until the Second Circuit appeal resolved.[22] According to AAIC, if the Delaware action were allowed to continue during the pendency of the appeal, it would give Hertz "a second bite at the apple."[23] This is so, said AAIC, because the AAIC policy is a "strict follow-form policy" and Hertz would be asking a Delaware court to interpret "the same policy with the same language that [the New York federal court] interpreted and that Hertz lost."[24]

The New York federal court denied AAIC's motion, explaining that "[t]he preclusive effect of a judgment is ordinarily decided in a subsequent action where the preclusion issue is raised; the first court does not dictate the preclusive effect of

---

[20] *Id.* ¶ 67.

[21] *Id.* ¶¶ 62-70.

[22] *See* D.I. 35, Ex. 1 ("Transcript of Oral Argument and Ruling on AAIC's interpleader action") at 2-3.

[23] *Id.* at 7.

[24] *Id.*

its own judgment. Accordingly, the Delaware Action is a proper forum to decide the issue of collateral estoppel."[25] Too, that court noted the Second Circuit's jurisdiction is over a case involving two other insurance companies and Hertz; thus, no decision in AAIC's case would "wrest jurisdiction from the Second Circuit."[26]

### D. THE POLICY

As relevant to the analysis here, the AAIC Policy follows the Primary Policy.[27] The Primary Policy defines coverage, in pertinent part, as follows:

**COVERAGE A: EXECUTIVE LIABILITY INSURANCE**

This policy shall pay the **Loss** of any **Insured Person** arising from a **Claim** made against such **Insured Person** for any **Wrongful Act**, except when and to the extent that an **Organization** has indemnified such **Insured Person**. Coverage A shall not apply to **Loss** arising from a **Claim** made against an **Outside Entity Executive**.

**COVERAGE B: ORGANIZATION INSURANCE**

(i) *Organization Liability*: This policy shall pay the **Loss** of any **Organization** arising from a **Securities Claim** made against such **Organization** for any **Wrongful Act**. The **Insurer** shall, in accordance with and subject to Clause 8, advance **Defense Costs** of such **Claim** prior to its final disposition.

(ii) *Indemnification of an Insured Person*: This policy shall pay the **Loss** of an **Organization** arising from a **Claim** made against an **Insured Person** (including an **Outside Entity Executive**) for any **Wrongful Act**, but only to the extent that such **Organization** has

---

[25]  *Id*. at 17-18 (internal citations omitted).

[26]  *Id*. at 13-14.

[27]  AAIC Policy § Declarations ("Unless otherwise designated above by an asterisk in front of another **Underlying Insurance**, the **Followed Policy** is the **Primary Policy**." (bold in original)).

indemnified such **Insured Person**.[28]

The Primary Policy defines "Claim" as:

> (1) a written demand or notice for monetary, non-monetary or injunctive relief;
>
> (2) a civil, criminal (including any appeal therefrom), administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by:
>
>> (i) service of a complaint, notice of deposition or similar document;
>>
>> (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or
>>
>> (iii) receipt or filing of a notice of charges or similar document; or
>>
>> (iv) a demand for mediation or other alternative dispute resolution proceeding: or
>>
>> (v) receipt of a complaint commencing an administrative proceeding;
>
> (3) any official request for **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**; or
>
> (4) any **Organization Shareholder Derivative Investigations**; or
>
> (5) a written request to toll or waive a period or statute of limitations; or
>
> (6) a civil, criminal, administrative or regulatory investigation

---

[28] Primary Policy § 1 (Insurance Agreements) (bold and italicization in original).

(including, but not limited to, an SEC, DOJ, state attorney general, Equal Employment Opportunity Commission ("EEOC"), grand jury investigation or any self-regulatory organization) of an **Insured Person**:

> (i) once such **Insured Person** is identified in writing by such investigating authority as a person against whom a proceeding described in Definition (b)(2) may be commenced; or

> (ii) in the case of an investigation by the SEC or a similar federal, state or foreign government authority, after the service of a subpoena, entry of a formal order of investigation, or Wells Notice or with regard to a foreign proceeding, any foreign equivalent document, upon such **Insured Person**; or

> (iii) commenced by the arrest and detainment or incarceration for more than 24 hours of an **Insured Person** by any law enforcement authority in a **Foreign Jurisdiction**; or

(7) the equivalent document in a Foreign Jurisdiction for (1)-(6) above.

The term "**Claim**" shall include any **Securities Claim** and any **Employment Practices Claim**, and any equivalent thereof in any **Foreign Jurisdiction**.[29]

The Primary Policy defines "Organization" as:

> (1) the **Named Entity**;

> (2) each **Subsidiary**; and

> (3) in the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor-in-possession

---

[29]  *Id*. § 2(b) (bold in original).

(or equivalent status outside the United States), if any.[30]

The Primary Policy defines "Securities Claim" as:

> a **Claim**, other than an investigation of an **Organization**, made against any **Insured** and brought anywhere in the world:
>
>> (1) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities or common law (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:
>>
>>> (i) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities (as defined in the Securities Exchange Act of 1933) of an **Organization**; or
>>>
>>> (ii) brought by a security holder of an **Organization**, whether individually or by class action, with respect to such security holder's interest in securities (as defined in the Securities Exchange Act of 1933) of such **Organization**; or
>>
>> (2) which is a **Derivative Suit**.
>>
>> Notwithstanding the foregoing, the term "**Securities Claim**" shall include an administrative or regulatory proceeding against an **Organization**.[31]

The Primary Policy defines "Wrongful Act" as:

> (1) any actual or alleged breach of duty, neglect, error, statement, misstatement, misleading statement, omission or act or any actual or alleged **Employment Practices Violation**:

---

[30]  *Id*. § 2(v) (bold in original).

[31]  *Id*. § 2(bb) (bold in original).

(i) with respect to any **Executive** of an **Organization**, committed or attempted or allegedly committed or attempted by such **Executive** in his or her capacity as such or any matter claimed against such **Executive** solely by reason of his or her status as such; or

(ii) with respect to any **Employee** of an **Organization**, committed or attempted or allegedly committed or attempted by such **Employee** in his or her capacity as such, but solely with respect to any: (a) **Securities Claim**; or (b) other **Claim** so long as such **Claim** is also maintained against an **Executive** of an **Organization**; or

(iii) with respect to any **Outside Entity Executive**, committed or attempted or allegedly committed or attempted by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** by reason of his or her status as such;

(2) with respect to an **Organization**, any actual or alleged breach of duty, neglect, error, statement, misstatement, misleading statement, omission or act committed or attempted or allegedly committed or attempted by such **Organization**, but solely in regard to a **Securities Claim**.

(3) with respect to a **Controlling Person**, any actual or alleged breach of duty, neglect, error, statement, misstatement, misleading statement, omission or act committed or attempted or allegedly committed or attempted by the **Controlling Person** in his, her or its capacity as such or any matter claimed against such **Controlling Person** solely by reason of his, her or its status as such, but solely in regard to a **Securities Claim**.[32]

## E.  THE COMPLAINT HERE

In Hertz's single-count complaint, it insists AAIC breached the excess policy

---

[32]  *Id*. § 2(dd) (bold in original).

by refusing to reimburse Hertz "for that portion of the defense fees and costs which were incurred and paid in defending Hertz and its directors and officers against, and otherwise responding to, the SEC [Matter] up to their policy's respective limits."[33] Hertz says that the SEC Matter constitutes a Securities Claim against Hertz for a Wrongful Act and a Claim against Insured Persons for a Wrongful Act.[34]

## F. THE MOTIONS

Initially, AAIC moved to dismiss the Complaint on the grounds of res judicata and collateral estoppel.[35] In the alternative, AAIC suggested the Complaint should be stayed pending the outcome of the New York interpleader action.[36] The Court denied the motion to dismiss, finding the Complaint was well-pled and the collateral estoppel and res judicata issues required a more complete record.[37]

Now, Hertz asks for summary judgment on AAIC's Third and Fourth Affirmative Defenses (#3 and #4), by asking the Court to find: (1) "the SEC Matter constitutes a Securities Claim against Hertz for a Wrongful Act"; and (2) "the SEC Matter constitutes a Claim against Insured Persons for a Wrongful Act."[38]

---

[33] Compl. ¶¶ 62-70.

[34] *Id.* ¶ 67.

[35] Defendant Altera Insurance Company's Motion to Dismiss ("AAIC's Mot. to Dismiss") at 2-4 (D.I. 15).

[36] *Id.* at 15-16.

[37] D.I. 40 (Aug. 29, 2022 Oral Arg. Tr. and Ruling on AAIC's Mot. to Dismiss) at 39-44.

[38] Hertz's Mot. for Partial Summ. J. at 2.

In opposition, AAIC asks for summary judgment on the entire Complaint, asserting (1) the SEC Matter constitutes neither a Securities Claim against Hertz, nor a Claim against Insured Persons, (2) proper notice was not given, (3) collateral estoppel and res judicata apply to bar this subsequent action, and (4) the policy has not been exhausted.[39]

Earlier, the Court heard oral argument on the dueling motions for summary judgment. Following the hearing, the Court requested supplemental briefing on the issues of (1) choice of law and (2) exhaustion.[40] That supplemental briefing having been completed,[41] the motions are now ripe for decision. As an initial matter, neither the purported conflicts of law identified by the parties nor the issue of exhaustion necessitate the Court's further engagement in a choice of law analysis or resolution of the exhaustion question.

### III. PARTIES CONTENTIONS

#### A. HERTZ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Hertz says the SEC Matter is a Securities Claim against it because the June 11, 2014 SEC Letter constituted a demand for non-monetary relief and the latter SEC

---

[39] AAIC's Mot. for Summ. J. at 3-6.

[40] D.I. 101.

[41] Defendant's Opening Supplemental Brief (D.I. 105); Opening Supplemental Brief in Support of Plaintiff's Motion For Partial Summary Judgment (D.I. 106); Reply in Support of Plaintiff's Opening Supplemental Brief in Support Of Plaintiff's Motion For Partial Summary Judgment (D.I. 117); Defendant's Supplemental Response Brief (D.I. 118).

Order constituted an administrative or regulatory proceeding.[42]  Hertz says the SEC

Matter is also a Claim against Insured Persons for those same reasons.[43]

## B. AAIC'S CROSS-MOTION FOR SUMMARY JUDGMENT

In AAIC's view: (1) the SEC Matter constitutes neither a Securities Claim

against Hertz, nor a Claim against Insured Persons; (2) Hertz failed to provide AAIC

with proper notice; (3) collateral estoppel and res judicata apply to bar this

subsequent action; and, (4) the underlying insurance has not been exhausted.[44]

## IV. STANDARD OF REVIEW

Summary judgment is warranted upon a showing "that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a

matter of law."[45]  Where cross-motions for summary judgment are filed on a

particular issue and neither party argues the existence of a genuine issue of material

fact thereon, "the Court shall deem the motions to be the equivalent of a stipulation

for decision on the merits based on the record submitted with the motions."[46]  So

"upon cross motions for summary judgment [on that issue], this Court will grant

---

[42] Hertz's Mot. for Partial Summ. J. at 13-26.

[43] *Id*. at 26-34.

[44] AAIC's Mot. for Summ. J. at 19-51.

[45] Del. Super. Ct. Civ. R. 56(c).

[46] Del. Super. Ct. Civ. R. 56(h).

summary judgment to one of the moving parties."[47] And on that issue, "the questions before this Court are questions of law not of fact, and the parties by filing cross motions for summary judgment have in effect stipulated that the issue[] raised by the motions [is] ripe for a decision on the merits."[48]

There, on the issue raised, the burden is on the moving party to demonstrate its prayer for summary judgment is supported by undisputed facts or an otherwise adequate factual record to support a legal judgment.[49] "If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for resolution by the ultimate fact-finder."[50]

The Court may grant a motion for summary judgment when: "(1) the record establishes that, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and (2) in light of the relevant law and those facts, the moving party is legally entitled to judgment."[51] The Court cannot grant a motion for summary judgment "[i]f . . . the record reveals that material facts

---

[47]  *Health Corp. v. Clarendon Nat. Ins. Co,* 2009 WL 2215126, at *11 (Del. Super. Ct. July 15, 2009).

[48]  *Id.*

[49]  *See CNH Indus. Am. LLC v. Am. Cas. Co. of Reading*, 2015 WL 3863225, at *1 (Del. Super. Ct. June 8, 2015).

[50]  *Id.*

[51]  *Haft v. Haft*, 671 A.2d 413, 414-15 (Del. Ch. 1995) (citing *Burkhart v. Davies*, 602 A.2d 56, 58-59 (Del. 1991)); *see also Brooke v. Elihu-Evans*, 1996 WL 659491, at *2 (Del. 1996) ("If the Court finds that no genuine issues of material fact exist, and the moving party has demonstrated his entitlement to judgment as a matter of law, then summary judgment is appropriate.").

are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record . . . ."[52] But, at bottom, a claim "should be disposed of by summary judgment whenever an issue of law is involved and a trial is unnecessary."[53]

## V. DISCUSSION

### A. COLLATERAL ESTOPPEL BARS THE RELITIGATION OF WHETHER THE SEC MATTER CONSTITUTES A SECURITIES CLAIM AGAINST HERTZ FOR A WRONGFUL ACT.

AAIC says Hertz's claims are barred by res judicata and collateral estoppel because the New York federal court already interpreted the Primary Policy.[54] Hertz says neither doctrine applies.[55]

In examining whether collateral estoppel or res judicata apply, the Court applies the law from the initial forum, which is New York.[56]

---

[52] *CNH Indus. Am. LLC*, 2015 WL 3863225, at *1.

[53] *Jeffries v. Kent Cty. Vocational Tech. Sch. Dist. Bd. of Educ.*, 743 A.2d 675, 677 (Del. Super. Ct. 1999).

[54] AAIC's Mot. for Summ. J. at 47-50.

[55] Plaintiff's Brief in Opposition to Defendant's Cross-Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment ("Hertz's Answering Br.") at 43-47 (D.I. 72).

[56] *Asbestos Workers Local 42Pension Fund v. Bammann*, 2015 WL 2455469, at *16, *16 n.129 (Del. Ch. May 21, 2015) (applying New York law when considering the elements of collateral estoppel—even though the initial forum was in a New York federal court—because "New York recognizes that its law of collateral estoppel has 'no discernible difference' from federal law" (quoting *Carroll v. McKinnell*, 2008 WL 731834, at *2 (N.Y. Sup. Ct. Mar. 17, 2008))), *aff'd sub nom. Asbestos Workers Loc. 42 Pension Fund v. Bammann*, 132 A.3d 749 (Del. 2016); *Hertz Global Hldgs., Inc.*, 530 F.Supp.3d at 453.

### 1. Collateral Estoppel Applies.

"Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity."[57] The underlying theory is the avoidance of relitigating "a decided issue" and the possibility that relitigation could result in "an inconsistent result."[58] For collateral estoppel to apply, (1) "[t]here must be an identity of [the] issue which has necessarily been decided in the prior action and is decisive in the present action," and (2) "there must have been a full and fair opportunity to contest the decision now said to be controlling."[59] The party seeking to invoke collateral estoppel:

> must demonstrate that the decisive issue was necessarily decided in the prior action against a party, or one in privity with a party. The party to be precluded from relitigating the issue bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination.[60]

AAIC has demonstrated that the issue of whether the SEC Matter was covered under the Primary Policy was decided by the New York federal court in the prior action.[61]

---

[57] *Buechel v. Bain*, 766 N.E.2d 914, 919 (N.Y. 2001) (citation omitted).

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] AAIC's Mot. for Summ. J. at 47-50; Reply Brief in Support of Defendant's Cross-Motion for Summary Judgment ("AAIC's Reply Br.") at 26-29 (D.I. 78).

Hertz counters that collateral estoppel is inapplicable because: (1) the issues decided by the New York federal court were pure questions of law; (2) the Primary Policy and the AAIC Policy are different; (3) the issue of exhaustion was not a fact when the New York federal action was decided; and, (4) the New York federal court found that the SEC Matter was not a "Claim against Insured Persons" as an "alternative holding."[62]

First, Hertz argues that the bar of collateral estoppel does not apply to a "pure question of law," which it says the interpretation of an insurance contract is.[63] Hertz is correct that collateral estoppel does not apply to pure questions of law under New York law,[64] but the interpretation of an insurance contract is not a pure question of law.[65]

The source of the pure question of law doctrine is *American Home Assurance Co. v. International Insurance Co.*, where the New York Court of Appeals explained

---

[62]  Hertz's Answering Br. at 44-47.

[63]  *Id*. at 44 (citations omitted).

[64]  *Am. Home Assurance Co. v. Int'l Ins. Co.*, 684 N.E.2d 14, 16 (N.Y. 1997) ("At the outset, the Court concluded that the salient question of the need for a prejudice showing was a purely legal one as to which the collateral estoppel bar is inapplicable." (citation omitted)).

[65]  *Id.* (explaining that the question of "whether an excess carrier must make a showing of actual prejudice when it seeks to avoid its coverage obligations because of late notice" is a "pure question of law."). While New York state and federal courts have said "[t]he interpretation of insurance contracts is purely a question of law for the courts," those statements were made in the context of the standard of review on summary judgment. *See, e.g., Regional Logistics Gp, LLC v. West Am. Ins. Co.*, 2023 WL 2694067, at \*6 (W.D.N.Y. Mar. 28, 2023) (stating "[t]he interpretation of insurance contracts is purely a question of law for the courts" for the proposition that contract interpretation can be decided on summary judgment).

that the question of "whether an excess carrier must make a showing of actual prejudice when it seeks to avoid its coverage obligations because of late notice" is a "pure question of law."[66]

Hertz cites to *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*[67] in support of its proposition that any judicial exercise involving interpretation of an insurance contract is a pure question of law.[68] But in *Plymouth Venture Partners*, the United States Court of Appeals for the Second Circuit dealt with the question of whether a judgment debtor suffers legally cognizable damages when a judgment creditor causes a debtor's funds to be levied on.[69] In other words, the court in *Plymouth* ruled on a question of law independent of any facts.[70] The interpretation of the insurance contract here, on the other hand, involves the application of rules of contract interpretation to particular terms and facts—*e.g.*, whether the specific SEC Order here initiates an investigation or administrative proceeding.[71] So it is not a

---

[66] *Am. Home Assurance Co.*, 684 N.E.2d at 16.

[67] 988 F.3d 634 (2d Cir. 2021), *certified question answered,* 183 N.E.3d 1185 (N.Y. 2021).

[68] Hertz's Answering Br. at 44.

[69] *Plymouth Venture Partners II, L.P.*, 988 F.3d at 642 (reversing the district court's application of issue preclusion in *Simon v. GTR Source, LLC*, 2019 WL 7283279 (S.D.N.Y. Dec. 26, 2019), because the issue decided in *GTR Source, LLC v. FutureNet Grp., Inc.*, 89 N.Y.S.3d 528 (N.Y. Sup. Ct. 2018) was a "pure question of law").

[70] *Id*; *see also Simon v. Cap. Merchant Servs., LLC*, 2020 WL 615091, at *10 (S.D.N.Y. Feb. 10, 2020) ("This holding answers a question of law, independent of any particular set of facts.").

[71] *See Hertz Global Hldgs., Inc.*, 530 F.Supp.3d at 454-55 (applying rules of contract interpretation to these facts).

pure question of law and collateral estoppel may indeed apply.

Second, the AAIC Policy is a follow-form policy to the Primary Policy.[72] And the terms analyzed and decided by the New York federal court are identical to the terms the Court would need to analyze here. Such re-examination of exact terms is what—at its core—collateral estoppel seeks to avoid.[73]

Third, Hertz says that because it now argues exhaustion, which it couldn't raise in the New York federal action, collateral estoppel doesn't apply.[74] Hertz cites to the New York Supreme Court's 1933 decision in *City of New York v. Coney Island Fire Department*[75] for that proposition.[76] But *Coney Island Fire Dept.* is of no help; exhaustion has no bearing on the outcome if Hertz's claims do not constitute covered claims. Accordingly, Hertz's assertion that exhaustion wasn't available doesn't prohibit the application of collateral estoppel.

Fourth, Hertz argues that, because the New York federal court only found *in the alternative* no coverage for the Claims against Insured Persons, collateral estoppel cannot apply at all.[77] AAIC responds that preclusion can still apply to

---

[72] *See, e.g.,* AAIC Policy § Declarations ("Excess Follow Form Policy").

[73] *See Buechel*, 766 N.E.2d at 919 (citation omitted).

[74] Hertz's Answering Br. at 46.

[75] 10 N.Y.S.2d 164, 168 (N.Y. Sup. Ct. 1939).

[76] Hertz's Answering Br. at 46.

[77] *Id.* at 46-47 (emphasis added); *see Hertz Global Hldgs., Inc.*, 530 F.Supp.3d at 459.

-19-

alternative holdings if they are "not open to any serious dispute."[78]

Hertz's primary basis for making its "alternative holding" argument is *Tydings v. Greenfield, Stein & Senior, LLP*.[79] In *Tydings*, the New York Court of Appeals stated that where a trial court gives two grounds for its decision but on appeal only one of the grounds is discussed, the other ground does not enjoy any preclusive effect.[80] But the application of *Tydings* only affects the Claim against Insured Persons, not the Securities Claim against the Insured. That is because lack of coverage was only an alternative holding for the Claim against Insured Persons.[81]

Accordingly, collateral estoppel precludes the re-determination regarding the Securities Claim against Hertz.

### 2. Res Judicata Does Not Apply.

Concerning res judicata, the doctrine "bars future litigation between the same parties, or those in privity with the parties, of a cause of action arising out of the same transaction or series of transactions as a cause of action that was either raised or could have been raised in a prior proceeding."[82]

AAIC was not a party to the New York litigation so AAIC and the primary

---

[78]  AAIC's Reply Br. at 28 (quoting *Tydings v. Greenfield, Stein & Senior, LLP*, 897 N.E.2d 1044, 1047 (N.Y. 2008)).

[79]  897 N.E.2d at 1044; Hertz's Answering Br. at 46.

[80]  *Tydings v. Greenfield, Stein & Senior, LLP*, 897 N.E.2d at 1047.

[81]  *Hertz Global Hldgs., Inc.*, 530 F.Supp.3d at 459.

[82]  *Edward Joy Co. v. Hudacs*, 199 A.D.2d 858, 859 (N.Y. App. Div. 1993) (citations omitted).

and first excess insurers must be in privity for res judicata to apply. "To establish privity with respect to either res judicata or collateral estoppel, 'the connection between the parties must be such that the interests of the nonparty can be said to have been represented in the prior proceeding.'"[83]

Hertz says AAIC didn't carry its burden to show that AAIC was in privity with the primary and first excess insurers.[84] Moreover, it argues that an excess insurer is not naturally in privity with a primary insurer by virtue of a follow-form policy.[85] The New York courts have not spoken directly on this issue.

At this point, the Court cannot conclude that AAIC was in privity with the primary and first excess insurers. Because any doubt as to whether res judicata applies is to be resolved against its application,[86] res judicata won't be applied here.

So, res judicata does not preclude Hertz's action. To summarize, collateral estoppel precludes relitigation of whether the Securities Claim against Hertz is covered, but not relitigation of the Claim against Insured Persons; and res judicata does not apply to either issue.

---

[83] *Bravo v. Altas Cap. Grp., LLC*, 196 A.D.3d 627, 628 (N.Y. App. Div. 2021) (quoting *Green v. Santa Fe Indus., Inc.*, 514 N.E.2d 105, 108 (N.Y. 1987)).

[84] Hertz's Answering Br. at 43 ("Alterra failed to carry its burden as to the application of res judicata because it failed to offer any argument for why all the elements of that doctrine are met.").

[85] *Id.* at 43-44; *Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 681 F.3d 819, 825 (6th Cir. 2012) (finding excess insurer not in privity with primary insurer simply because the excess policy was follow-form).

[86] *Buechel*, 766 N.E.2d at 920 ("Doubts should be resolved against imposing preclusion to ensure that the party to be bound can be considered to have had a full and fair opportunity to litigate.").

**B. THE SEC MATTER IS NOT A CLAIM AGAINST INSURED PERSONS.**

To Hertz, the SEC Matter constitutes a Claim against Insured Persons. Specifically, Hertz insists the SEC Letter constituted a Claim against Insured Persons because "[t]he SEC Letter states that the SEC was 'conducting an inquiry . . . to determine whether there have been any violations of the federal securities laws,' without specifying whether it is Hertz, as a corporate entity, or Hertz's directors, officers and employees, who were being investigated."[87] Additionally, Hertz says that "[t]he SEC Letter also asked for the identification of 'all persons, including name and title (former and current) at Hertz, with knowledge of the information' requested."[88]

Hertz wants the Court to read the generalized letter addressed to Hertz as a claim against unnamed and unreferred-to individuals because it was implicit that they were being investigated. Yet that's not so under a four-corner read of the letter. No matter, says Hertz, because "[w]hile this was [only] implicit in the SEC Letter, the SEC Order expressly targets Hertz executives and employees."[89] But such *post-hoc* examination doesn't rescue Hertz. The target of the SEC Letter was Hertz. And

---

[87] Hertz's Mot. for Partial Summ. J. at 29 (quoting Ex. D ("SEC Letter") at 1).

[88] *Id.*

[89] Hertz's Answering Br. at 38.

the only command the SEC gave in that letter was to Hertz.[90]

While Hertz admits that individuals weren't then expressly identified, it says that "the mere potential of Insured Persons being subject to the SEC Letter is sufficient to establish coverage."[91] It turns to two cases, neither of which help.

In *Syracuse University v. National Union Fire Insurance Company of Pittsburgh, P.A.*,[92] the New York Supreme Court rejected the contention that Syracuse University needed to be named as a target of an investigation for coverage to arise.[93] The Court found, instead, that coverage arose when there were "facts or allegations bringing the claim even potentially within the protection that was purchased."[94] But there, the duty arose when multiple subpoenas were issued for documents relating to Syracuse University's former associate basketball coach who was being investigated for sexual abuse while running the University's basketball program.[95] Coverage was triggered because "any liability of the plaintiff was necessarily dependent on the predicate liability of [the coach] inasmuch as [the coach] was an employee of plaintiff, a relationship that implicates issues regarding

---

[90] SEC Letter at 2 ("In this letter, I refer to such documents and data as 'Evidence.' **You have a duty to reasonably preserve and retain such Evidence**." (bold in original)).

[91] Hertz's Mot. for Partial Summ. J. at 30; *see also* Hertz's Answering Br. at 36 ("all Hertz need establish is that the SEC was potentially investigating its directors and officers").

[92] 2013 WL 3357812 (N.Y. Sup. Ct. Mar. 7, 2013).

[93] *Id*. at *3 (citation omitted).

[94] *Id*. (citation omitted).

[95] *Id*. at *1-2.

responsibility, including potential, vicarious, supervisory or derivative liability for [the coach]'s actions."[96]

In *National Stock Exchange v. Federal Insurance Company*,[97] the United States District Court for the Northern District of Illinois found that an SEC Letter constituted a claim against insured persons.[98] That finding was based on the SEC letter's express identification of the target to include both the company itself and also "present and former officers and directors."[99]

Unlike in *Syracuse*, Hertz—not its employees, directors, or officers—was named, and no subpoenas were issued. And unlike in *National Stock Exchange*, the SEC Letter did not define Hertz beyond its corporate identity. Instead, the SEC Letter informed Hertz directly that it was "conducting an inquiry" into "whether there have been any violations of the federal securities laws."[100] And it asked Hertz to provide "a chronology addressing the accounting issues" and also to "identify all persons, including name and title (former and current) at Hertz, with knowledge of the information provided in the chronology."[101] These facts indicate that the SEC Letter was addressed to Hertz and Hertz alone. As such, this SEC Letter does not

---

[96] *Id*. at *4.

[97] 2007 WL 1030293 (N.D. Ill. Mar. 30, 2007).

[98] *Id*. at *4.

[99] *Id*.

[100] SEC Letter at 1.

[101] *Id*.

constitute a Claim Against Insured Persons.

Because the SEC Letter does not constitute a Claim against Insured Persons, the SEC Investigation Order must constitute a Claim against Insured Persons for there to be coverage. For similar reasons, though, the SEC Order argument fails as well.

The SEC Order directs that "a private investigation be made" and provides the SEC with authority to "administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the inquiry."[102] But mere potentiality of an investigation or claim targeting an Insured Person fails to establish an *actual* Claim against an Insured Person. Tellingly, there is nothing in the record evidencing that the SEC ever served any subpoena or other written request for documents or information on any Insured Person.

Accordingly, Hertz has not alleged a covered Claim against Insured Persons for a Wrongful Act.

### C. THE SEC MATTER IS NOT COVERED AS A DEFENSE COST UNDER THE RAMIREZ AND ANSFIELD CLAIMS.

In response to AAIC's motion for summary judgment, Hertz asserts, in the

---

[102] Hertz's Mot. for Partial Summ. J., Ex. E ("SEC Order") at 5.

alternative to its Securities Claim against Hertz and Claim against Insured Persons arguments, that the defense costs of the SEC Matter should be covered because there were "significant amounts of . . . work done in connection with the SEC proceeding [that] was equally reasonable and necessary to the defense of the Ramirez and Ansfield Claims."[103]  Because the defense costs incurred in the SEC Matter were also used or closely related to the Ramirez and Ansfield claims, Hertz says summary judgment is not warranted.[104]  AAIC counters that defense costs for the SEC Matter cannot be covered because it is not a Securities Claim against Hertz or a Claim against Insured Persons.[105]

Defense costs, as defined by the Primary Policy, are "reasonable fees . . . resulting *solely* from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured** . . . ."[106]  So for the defense costs incurred during the SEC Matter

---

[103]  Hertz's Answering Br. at 48.

[104]  *Id.* ("questions of fact regarding whether the $27.2 million in defense costs are nevertheless covered Loss in connection with the Ramirez and Ansfield Claims preclude entry of judgment in Alterra's favor").

[105]  AAIC's Reply Br. at 18-21.

[106]  Primary Policy § 2(e) (emphasis added).

> "**Defense Costs**" means reasonable fees (including but not limited to legal fees and experts' fees), costs and expenses consented to by the **Insurer** such consent not to be unreasonably withheld, provided the **Insureds** have complied with Clause 8 of this policy (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured**, but excluding any compensation of any **Insured Person** or any **Employee** of an **Organization**.

to be covered, those costs must have resulted solely from "the investigation, adjustment, defense and/or appeal" of the Ramirez or Ansfield claims. Hertz does not argue the costs resulted solely from that investigation nor does the record reasonably support any such conclusion.

Accordingly, Hertz's last-ditch defense costs argument does not stave off summary judgment for AAIC.

## IV. CONCLUSION

For the reasons stated above, AAIC's Motion for Summary Judgment is **GRANTED** and Hertz's Motion for Partial Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

_____

Paul R. Wallace, Judge